## W. H. HARRISON & BRO. v. HOMŒOPATHIC ASS'N ET AL.

APPEAL BY PLAINTIFFS FROM THE COURT OF COMMON PLEAS
NO. 1 OF PHILADELPHIA COUNTY.

Argued January 17, 1890—Decided May 12, 1890.
[To be reported.]

1. Work done or materials furnished within six months prior to the filing of a mechanics' lien, to compensate for defective performance of a building contract, completed more than six months prior, will not extend the time and preserve the right to file such lien: Homœopathic Ass'n v. Harrison, 120 Pa. 28; McKelvey v. Jarvis, 87 Pa. 414, followed; Parrish's App., 83 Pa. 111, distinguished.

2. A contract to erect and furnish a building, according to certain plans and specifications, will not confer upon a material-man the right to file a mechanics' lien for a portable stove furnished to the contractor, though such stove be embraced in said plans and specifications: Dimmick v. Cook Co., 115 Pa. 573, distinguished.

Before PAXSON, C. J., STERRETT, GREEN, WILLIAMS, MC-COLLUM and MITCHELL, JJ.

No. 121 July Term 1889, Sup. Ct.; court below, No. 28 June Term 1887, M. L. D., C. P. No. 1.

On July 11, 1887, William H. Harrison and Charles H. Harrison, trading as W. H. Harrison & Brother, brought scire facias against the Women's Homœopathic Association of Pennsylvania, owner, and Robert McNichol, trading as George McNichol & Son, contractor, upon a mechanics' lien claim filed on June 25, 1887, against a certain building and its curtilage, particularly described. Annexed to the claim recited in the scire facias was a bill of particulars giving an itemized statement of the work and materials alleged to have been done and furnished by the plaintiffs in and about the erection of the building, with prices carried out for each item. The only items of charge in the bill of particulars bearing date within six months preceding the time of filing the claim, were the following, the last preceding item being under date of October 30, 1886:

Statement of Facts.

1887.

March 9. 1 soapstone hearth, 5 ft. 8½ in. × 1 ft. 6 in.,
         set $1 ;

         1 soapstone hearth, 6 ft. 5½ × 1 ft. 6 in.,
             make 18 ft. six in., at $1 set  .  .  .  $18 50

May 27. 1 13-iron laundry stove and piping  .  $25 00

The various charges aggregated $3,169.96. Credits, without date, were allowed, for cash, $1,279.92, and for two soapstone hearths, $18.50, the balance claimed being $1,871.54.

An affidavit and a supplemental affidavit of defence were filed by the defendant association, which averred that the lien of the plaintiffs had expired by reason of the failure to file the claim within six months after the last continuous work was done ; that the two hearths mentioned in the charge of March 9, 1887, were furnished to supply the places of two defective hearths, put in by the plaintiffs more than six months before the filing of the claim ; and that the laundry stove, which, with its necessary piping, was the subject of the charge of May 27, 1887, was not in any sense a part of the building, but was an ordinary piece of personal property, as much adapted for use in any one laundry as in any other.

A rule for judgment for want of a sufficient affidavit of defence, after argument, was made absolute, and damages assessed at $1,901.48 ; but, on writ of error to No. 61 January Term 1888, the judgment was reversed by the Supreme Court, with an award of a procedendo : Homœopathic Ass'n v. Harrison, 120 Pa. 28. The record with the remittitur having been returned to the court below, the defendant, the hospital association, pleaded no lien, set-off, nil debet, payment, payment with leave, etc., and a special plea making the same averments as those contained in the affidavits of defence. Issue.

At the trial on April 2, 1889, the following facts were shown upon the part of the plaintiffs :

In 1884 the association defendant had erected for it two buildings for hospital purposes. Robert McNichol, trading as George McNichol & Son, was the contractor for the erection of the main building, under a contract containing the following provisions :

" The said building to be erected according to certain drawings which have been prepared by W. E. Jackson, architect,

Statement of Facts.

. . . . . the whole work being carried out under his supervision and to his satisfaction and approval.

" The architect will reserve the right to approve all of the sub-contractors.

" All materials used to be the best of their. several kinds, subject to the approval or rejection of the architect, who shall have full power to refuse any different from those described either on the plans or in the specifications, and to cause any unsound work to be taken down, altered, and removed at the expense of the contractor. No allowance to be made for any extra work whatever, unless the cost of the same, previous to erection, is agreed upon in writing between the parties to this contract, or their legal representatives."

McNichol sublet to Harrison & Bro., in accordance with the following proposal, the portions of the work therein mentioned :

" Gentlemen : We will furnish all the tin flues as specified for Women's Homœopathic Hospital, all the registers as specified, two Jackson heating and ventilating grates, all the range work, all the soapstone fireplaces, twenty-eight in number, all the soapstone hearths, laundry stove ˙(twelve-iron), for $2,988, according to the plans and specifications of the architect.

" W. H. HARRISON & BRO."

By October 30, 1886, the plaintiffs had fully performed their contract, except the furnishing and setting of the laundry stove and its appurtenances. Two hearths they had supplied and set previous to that date were ordered out, however, by the architect on account of breakage, and on March 9, 1887, the plaintiffs substituted others in their places. The testimony respecting these hearths was as follows :

W. E. Jackson, the architect, testified that he ordered the two hearthstones out ; the materials were good, to the best of his knowledge, when they were set, but they were broken when his attention was called to them, and he ordered them out and to be re-set without extra charge ; the plaintiffs replaced them ; the witness did not know when or how the hearthstones were broken. W. H. Harrison, one of the plaintiffs, testified that plaintiffs knew that Mr. McNichol was in trouble, and they did not wish to charge him any more than the exact amount of the contract; somebody had broken the hearths, they did not, and they were ordered out ; the plaintiffs took them out

Arguments.

and put in new ones for which they made no extra charge, owing to Mr. McNichol's condition. The workmen who delivered and set the two hearthstones that were taken out, were not called, and there was no testimony to explain how they were broken.

The laundry stove was originally intended to be put into the building for which McNichol had the contract, and that contract, as well as the sub-contract with the plaintiffs, required it to be set up therein. It was finally determined, however, to place it in the other building, and on April 27, 1887, the architect wrote to the plaintiffs as follows : " Your contract calls for a laundry stove (12 irons); we are going to put it up in the other building. Please send it up as soon as possible, and oblige." In accordance with this instruction the plaintiffs furnished the stove, piping, etc., and the architect attended to having it set up in the other building. In regard to this stove the architect testified that the stove was set up in the centre of the room, and that it was no part of the building ; it could be put in anywhere ; in a parlor, for instance ; but it must be put in a location where it could be attached to a smoke flue. A photograph of the laundry in which the stove was set up was produced by the defendants and identified by the witness Jackson upon cross-examination. It was alleged in the appellant's paperbook that this photograph showed the stove to be physically annexed to the building.

At the close of the testimony for the plaintiffs the defendant moved for a compulsory nonsuit, on the ground that the plaintiffs' claim was not filed as a lien within six months after the date of the last item for which they had a right to enter a lien.

By the court: Motion sustained and nonsuit granted.

A motion for a rule to take off the nonsuit, after argument, was dismissed by the court, whereupon the plaintiffs took this appeal, specifying that the court erred :

1. In entering the judgment of nonsuit.

*Mr. John G. Johnson* (with him *Mr. William Henry Lex*), for the appellants :

1. When this case was here before it was sent back for submission to a jury, but the court below has refused to submit it.

Arguments.

It presents now, however, a state of facts very different from that which appeared when this court had before it merely the affidavit of defence, uncontradicted. It did not then appear that the work of the plaintiffs was all done for a lumping price, under one contract; nor that the replacement of the hearths was in pursuance of the architect's arbitrary directions, given without any knowledge as to whether they were properly set in the first instance. Although the plaintiffs' bill of particulars gives separate prices for all the items of work and materials, because they could charge no more against the owner of the building than a quantum meruit,* the sum to be paid them upon the sub-contract was an entire one, and nothing was recoverable until their work was all completed.

2. The architect was the agent of the owner and the plaintiffs were justified in following his directions. Within six months from completion of the work, in accordance with the architect's requirements, they filed their lien. The six months could not commence to run before the setting of the hearths on March 9, 1887, because, if the hearths first put in were defective, the contract was not then completed. A supply of defective hearths was equivalent to no supply, and if those originally contracted for had not been supplied till March 9, 1887, there could be no question that a lien might be filed within six months thereafter. Whether the architect, as the owner's agent, properly or improperly rejected these hearths, they clearly were supplied as a part of the work originally contracted for, and because the owner claimed to be entitled to them under the contract. The plaintiffs are therefore entitled to recover: McKelvey v. Jarvis, 87 Pa. 417.

3. The laundry stove, supplied in March, 1887, sustains the lien filed within six months thereafter for the entire job. The original contract with McNichol provided for the erection of the stove as a part of the building, and its supply was a part of the work which the plaintiffs contracted to do. It would be gross injustice to them, when they deferred filing their lien until the defendants were ready to receive the stove, if the lien should be defeated because, at the last moment, it was

---

* See § 5, act of April 16, 1845, P. L. 538; Lee v. Burke, 66 Pa. 336; Barclay's App., 13 Pa. 497.

Arguments.

ordered to be put up in another building.  The laundry was a necessary part of the hospital, and the stove was a necessary fixture, without which the laundry would be as incomplete as a manufactory without machinery.  It is therefore the subject of a mechanics' lien: Goddard v. Chase, 7 Mass. 432; Dimmick v. Cook Co., 115 Pa. 573; Gray v. Holdship, 17 S. & R. 413; Wademan v. Thorp, 5 W. 115; Morris's App., 88 Pa. 383.  Moreover, it was physically annexed, as the photograph showed.

*Mr. Paschal H. Coggins* and *Mr. Richard P. White*, for the appellee:

1. The testimony fully established the allegations of the affidavit of defence respecting the stove, and therefore that item cannot sustain the lien, as the law of the case has been already laid down by this court.  In addition, it is shown that the stove was supplied with full knowledge that it was for the other building.  There is no such principle as that contended for by the plaintiffs, viz., that the contractor and the sub-contractor may, by making a lumping or entire contract between themselves, render the building subject to a lien for furniture or other personal property, not within the mechanics' lien law.  This stove was not built into the walls, as was the case in Goddard v. Chase, 7 Mass. 432, and the other citations by the plaintiffs may all be explained upon other theories than those advanced by them.

2. There is not the slightest suggestion of evidence that any human being touched or saw the hearths first put in, between the time when they were set by the plaintiffs' workmen and the discovery of their broken condition.  No one was produced who saw them safely delivered or set.  On the contrary, the actions of the plaintiffs, at the time of the transaction, most unequivocally admitted that the stones had been broken by their workmen.  The second set having been furnished to supply a deficiency for which they were thus responsible, the plaintiffs, by entering an additional charge therefor in their account, with a corresponding credit for the first set, cannot sustain their stale claim.  That charge, as it was undenied, was not intended as a charge against anybody for any amount. The case of McKelvey v. Jarvis, 87 Pa. 414, which differs from

this one in that the person with whom the plaintiff therein contracted was the owner, was duly considered by this court in Homœopathic Ass'n v. Harrison, 120 Pa. 28.

OPINION, MR. JUSTICE McCOLLUM:

If the facts alleged in the affidavit of defence appeared in the appellants' testimony, it was the duty of the court, on the motion of the appellee, to enter a compulsory nonsuit. When this case was here before, 120 Pa. 28, it was decided that neither the furnishing and setting of the two soapstone hearths on the 9th of March, 1887, to compensate the deficiency in the work done and charged for on the 7th of July, 1886, nor the furnishing and setting of a portable laundry stove, which was not used or intended to be used in the construction of the building, but was an ordinary piece of personal property, "as much adapted for use in one laundry as in any other," extended the time for filing the lien.

The evidence produced by the appellants on the trial brought their case fairly within the principles of this decision, and demonstrated that their claim was not filed in time. They proved that the two soapstone hearths put in by them on the 9th of March were to supply the two broken soapstone hearths included in their charge of the 7th of July preceding; that they were required by the architect to replace the broken hearths with sound ones, and that they did so without protest or additional compensation. They admit that they made no extra charge against the owner or contractor for the new hearths, and that they were not present when the broken hearths were set; and they failed to show by their workmen who delivered the hearths in place that they were then sound and in good condition. It is obvious, from the appellants' account of the transaction, that the new hearths were supplied by them gratuitously, to compensate for the defective hearths they had previously furnished. It clearly appears from their testimony that these hearths were broken when first seen and inspected by the architect, and whether their condition was caused by defective materials or defective setting is unimportant. It is true that their bill of particulars contained a charge under date of March 9, 1887, of $18.50 for two soapstone hearths, and a credit of like amount for two soapstone hearths, but, in view

of their explanation of them, these entries are of no consequence.

It was held in McKelvey v. Jarvis, 87 Pa. 414, that work done to compensate defective performance of a contract for work and material in the construction of a building will not preserve the lien, but that work substituted for that called for in the contract may do so. In the former case the contract is unchanged, the work is done without charge to the owner or contractor, and to make good the previous default of the mechanic or material-man; in the latter, the work is done under a contract modified by the agreement of all the parties interested in it. This distinction was noted and illustrated by our Brother CLARK in Homœopathic Ass'n v. Harrison, 120 Pa. 28.

The rule laid down in McKelvey v. Jarvis, supra, is not in conflict with the decision on the claim of Brenneman & Ward in Parrish's App., 83 Pa. 111. In that case the work done by the claimants was in exact compliance with the terms of their contract with the owner, and the alteration of the mud-drums was made necessary by a mistake in the drawings furnished by the latter. It was not done to compensate a deficiency in the work of the claimants, but was required by the owners to correct their own error, at their own expense.

The laundry stove was included in the specifications for the hospital, and in the proposal of the appellants which was accepted by McNichol the contractor. It was placed in the laundry room of a building which was not embraced in McNichol's contract, and the appellants knew its destination before they delivered it. It was a portable stove constructed for the purpose of heating laundry irons, but it was no more a part of the building than an ordinary parlor or kitchen stove. It was accurately described in the affidavits of defence, as the appellants' testimony clearly shows. The mere fact that it was furnished under a contract which included materials for the construction of the building, does not entitle the material-men to a lien for it. A contract to build and furnish a dwelling-house according to certain plans and specifications, and for an entire price, would not confer upon the contractor a right to a lien for the portable stoves, the carpets, and other furniture essential to its use as a dwelling. In Dimmick v. Cook

Co., 115 Pa. 573, the claimant was allowed a lien for steam-heating apparatus and engine, laundry apparatus, ranges, and cooking apparatus, etc.; but these things were not only included in the original plans and designs of the building, but were permanently located in it by masonry, pipes, shafting, etc. The lien was sustained upon the ground that the apparatus was permanent in its character, a constituent part of the building, and would pass with the freehold.

As we have seen, the appellants are not entitled to a lien for the soapstone hearths put in on the 9th of March, 1887, nor for the laundry stove furnished on the 27th of May following. The last work done and materials furnished by them, for which they could have a lien, was on the 30th of October, 1886, and they did not file their claim until the 25th of June, 1887. As the claim was not filed in time, the nonsuit was rightly entered.

Judgment affirmed.