NEELU ENTERPRISES, INC. d/b/a
KB Builders, Appellant

v.

Ashok AGARWAL and Asha Agarwal,
Husband and Wife, Appellees.

Superior Court of Pennsylvania.

Argued Oct. 23, 2012.

Filed Dec. 18, 2012.

Lowell R. Gates, Lemoyne, for appellant.

Andrew T. Kravitz, Harrisburg, for appellees.

BEFORE: SHOGAN, LAZARUS and OTT, JJ.

OPINION BY SHOGAN, J.:

Appellant, Neelu Enterprises, Inc. d/b/a KB Builders, appeals from the trial court's March 27, 2012 order sustaining Appel-

lees', Ashok and Asha Agarwal's, preliminary objections to Appellant's mechanics' lien claim and dismissing Appellant's claim. We affirm.

The trial court set forth the relevant factual and procedural history as follows:

Neelu Enterprises, Inc., d/b/a KB Builders (hereinafter "Claimant") filed a Mechanics' Lien claim on June 23, 2011, against certain real property located at 2212 Eaglesmoor Lane, Hampden Township, Enola, PA 17025, in order to obtain payment for residential construction work performed on that property owned by Ashok and Asha Agarwal (hereinafter "Owners"). (Mechanics' Lien Claim, filed Jun. 23, 2011). The Claimant avers that, in November of 2008, the parties entered into a Construction Agreement for the building of a residential home, a copy of which was attached to the Claim, and that Claimant did complete a substantial portion of the work, for which it received payment in the amount of $585,000. (Mechanics' Lien Clam, filed Jun. 23, 2011). Furthermore, Claimant avers that after it began construction of the home, yet prior to its completion, the Defendant Owners informed Claimant that their Agreement was being terminated, effective immediately, and that the Owners thereafter "brought in their own subcontractors ..." to finish the work on the new home construction. (Mechanics' Lien Clam, filed Jun. 23, 2011). As evidence thereof, the president of Claimant's business and the Owners signed a one page, hand-written agreement, dated December 8, 2010, whereby Claimant and Owners "acknowledged that Agarwals were terminating Neelu's construction services and that Agarwals would be dealing with the subcontractors directly." (Termination Agreement, Claimant's Response, Ex. B, filed Dec. 12, 2011). As a result of the ousting, Claimant seeks the sum total of $96,000, which is based upon the denied profit remaining on the contract plus $20,000, which Claimant avers is due and owed to it for the purchase and installation of additional casement windows.

Owners have responded to the Mechanics' Lien Claim with preliminary objections, seeking, first, that the claim be stricken because it was filed more than six months after the completion of the work on the project and is thus in violation of the Mechanics' Lien Law, and, second, that the claim be stricken because of an alleged waiver by the Claimant of its right to file a mechanics' lien claim. (Preliminary Objections, filed Sep. 23, 2011). In their Preliminary Objections, Owners assert that the Claim is untimely because, although the Claim alleges that work was performed on the property from November 8, 2009 through January 10, 2011 by Neelu and its subcontractors, neither Claimant nor its subcontractors performed any work on the property after October of 2010. (Preliminary Objections, 10, filed Sep. 23, 2011). Owners allege that Claimant had instead resigned as general contractor for the construction work on December 8, 2010, and, as evidence thereof, the parties signed the one page, hand-written agreement, whereby Claimant and Owners "acknowledged that Agarwals were terminating Neelu's construction services and that Agarwals would be dealing with the subcontractors directly." (Termination Agreement, Claimant's Response, Ex. B, filed Dec. 12, 2011). Because the Mechanics' Lien Claim was not filed until June 23, 2011, the Owners seek a demurrer, as the claim was not filed within six months after the completion of the work performed.

Trial Court Opinion, 2/8/12, at 1–2. In a February 29, 2012 hearing on Appellees'

preliminary objections, the trial court heard testimony on the question of when Appellant completed its work on Appellees' house in order to determine whether Appellant timely filed its mechanics' lien claim. Thereafter, the court issued an order sustaining Appellees' preliminary objections and dismissing Appellant's claim. Appellant then filed this timely appeal.

Appellant presents the following issues for this Court's consideration:

A. Based in part on the erroneous conclusion that the construction contract had been terminated, did the lower court make an erroneous conclusion of fact and law under 49 P.S. Section 1201(8) that the performance of the last of the labor and the delivery of the last of the materials to the construction site occurred within the six (6) months prior to the filing of the mechanics' lien[?]

B. At the preliminary objection stage, was it appropriate or necessary for the lower court to reach the conclusion that the construction contract between the plaintiff and defendants was terminated?

C. Should the lower court have interpreted the preliminary objections in a light most favorable to the plaintiff and unless the facts were free from doubt?

Appellant's Brief at 10. (Verbatim).

■■■■ At the outset, we note that although Appellant sets forth the three questions above as independent issues, it acknowledges that it, in fact, "asserts three (3) primary arguments in support of its position that [Appellant's] mechanics' lien was filed timely." Appellant's Brief at 17. Indeed, on review of Appellant's brief, it is clear that it seeks to challenge the conclusions reached by the trial court in sustaining Appellees' preliminary objections. Accordingly, we shall give consideration to Appellant's "issues" as argument in support of its claim of trial court error in sustaining Appellees' preliminary objections.

Our standard of review for an order dismissing a mechanics' lien claim based upon a preliminary objection in the nature of a demurrer is as follows:

When reviewing the dismissal of a [mechanics'. lien claim] based upon preliminary objections in the nature of a demurrer, we treat as true all well-pleaded material, factual averments and all inferences fairly deducible therefrom. Where the preliminary objections will result in the dismissal of the action, the objections may be sustained only in cases that are clear and free from doubt. To be clear and free from doubt that dismissal is appropriate, it must appear with certainty that the law would not permit recovery by the plaintiff upon the facts averred. Any doubt should be resolved by a refusal to sustain the objections. Moreover, we review the trial court's decision for an abuse of discretion or an error of law.

*Bricklayers of Western Pennsylvania Combined Funds, Inc. v. Scott's Development Co.*, 41 A.3d 16, 22 (Pa.Super.2012) (quoting *Ira G. Steffy & Son, Inc. v. Citizens Bank of Pennsylvania*, 7 A.3d 278, 282 (Pa.Super.2010)).

■■■■ As noted above, Appellant's principle claim is that it timely filed its mechanics' lien claim and the trial court's conclusion to the contrary was erroneous. Appellant's Brief at 17. Our analysis begins, as it must, with the provision of the Mechanics' Lien Law of 1963 controlling the timeliness of claims raised under the law. Specifically, the Mechanics' Lien Law provides as follows:

**§ 1502. Filing and notice of filing of claim**

**(a) Perfection of Lien.** To perfect a lien, every claimant must:

(1) file a claim with the prothonotary as provided by this act **within six (6) months after the completion of his work;**

49 P.S. § 1502(a)(1) (emphasis added in part). Our rules of civil procedure also provide guidance as to the timeliness of the mechanics' lien claim in this case. Specifically, Pennsylvania Rule of Civil Procedure 108 provides as follows:

**Rule 108. Time. Computation of Months**

Whenever in any rule the lapse of a number of months after or before a certain day is required, such number of months shall be computed by counting the months from such day, excluding the calendar month in which such day occurs, and shall include the day of the month in the last month so counted having the same numerical order as the day of the month from which the computation is made, unless there are not so many days in the last month so counted, in which case the period computed shall expire with the last day of such month.

Pa.R.C.P. 108.

Treating as true the well-pleaded facts as alleged in Appellant's mechanics' lien claim, we note Appellant asserts that "[t]he dates on which [Appellant] and its subcontractors performed work **for which this claim is being made were November 8, 2009 and January 10, 2011.**" Mechanics' Lien Claim, 6/23/11, ¶ 3 (emphasis added). The claim further alleges that "[Appellant] **completed work on time** and received payment in the amount of $585,000 when [Appellees] forcibly took over the construction site and brought in

their own subcontractors and breached the legitimate contract." *Id.* at ¶ 5 (emphasis added). The prothonotary's date stamp on the claim indicates that it was filed on June 23, 2011. Based solely on the foregoing facts as alleged and applying section 1502(a)(1) and Rule 108 together, Appellant had until July 10, 2011 to file its claim against Appellees. However, following Appellees' preliminary objections and pursuant to section 1505 of the Mechanics' Lien Law,[1] the trial court heard evidence solely on the question of whether Appellant timely filed its claim. Accordingly, we too must turn to the evidence proffered to determine whether Appellant completed work within six months of the date on which it filed its mechanics' lien claim.

First, we observe a unifying theme throughout Appellant's numerous arguments; namely, that the trial court should not have considered the December 8, 2010 termination agreement in reaching its determination that Appellant's work was complete as of that date. Appellant's Brief at 18. Appellant fails, however, to direct this Court to any authority or case law which would prohibit the trial court's reliance on such documentation in order to establish a completion date nor are we aware of any prohibition. On the contrary, the execution of the termination agreement is substantively very informative as to the question of when Appellant completed its work on Appellees' house. Therefore, we conclude Appellant's argument that the trial court erred in considering the termination agreement to be without merit.

During the hearing on Appellees' preliminary objections, Appellant admitted drafting the December 8, 2010 termination

---

**1.** Unlike the typical procedure for review of preliminary objections, the Mechanics' Lien Law provides: "If an issue of fact is raised in such objections, the court may take evidence by deposition or otherwise." 49 P.S. § 1505.

agreement and that the Appellees "fired" him. N.T., 2/29/12, at 23. Specifically, Kashmiri Batra, Appellant's owner, testified, "I wrote this one here (referring to the termination agreement) that they acknowledge that from this date they would be using their own subcontractors because they fired me. They let me go." *Id.* Mr. Batra went on to testify that "I refused to touch that place after they fired me." *Id.* at 28. He acknowledged further that, pursuant to the termination agreement, Appellees paid Appellant the $15,000.00 balance outstanding. *Id.* at 32. Mr. Batra testified that he then paid his subcontractors with the $15,000.00 received from Appellees. *Id.* at 35.

Consistent with Mr. Batra's testimony, Mr. Agarwal and his son, Ankush Agarwal, testified that after December 8, 2010, Ankush Agarwal took control of the project and undertook the hiring of subcontractors to complete construction. N.T., 2/29/12, at 9–10, 11–12. Ankush Agarwal testified further that after December 8, 2010, he and his family paid the contractors working on Appellees' house. *Id.* at 12.

For its part, Appellant offered the testimony of various subcontractors it employed in the construction of Appellees' house. Specifically, the trial court accepted the testimony of Appellant's plumbing and electrical subcontractors, as well as Appellant's plumbing and casement window suppliers. It was Mr. Batra's testimony that on January 7, 2011, he brought the subcontractors to the property to resolve Appellees' outstanding complaints. N.T., 2/29/12, at 26. The subcontractors confirmed they were there to address Appellees' complaints. *Id.* at 45, 48–49, 57.[2]

Thus, the trial court found that Appellant's January 7 return to the property was "to observe and correct certain deficiencies." Trial Court Opinion, 3/27/12, at 2.

Accordingly, based on our Supreme Court's disposition in *Harrison v. Women's Homeopathic Hospital Ass'n*, 134 Pa. 558, 19 A. 804 (1890), the trial court concluded that Appellant's presence on Appellees' premises in January 2011 after the completion of the contract was "to compensate for defective performance" and that such work did not extend the date of completion. We agree.

In *Harrison*, the claimant, as Appellant here, argued that the provision of a soapstone hearth intended to replace a defective hearth preserved its lien against the owner. Our Supreme Court, holding that the subsequent work did not extend the time in which the claimant could pursue its mechanics' lien claim, reasoned as follows:

> It was held in *McKelvey v. Jarvis*, 87 Pa. St. 414, that work done to compensate defective performance of a contract for work and material in the construction of a building will not preserve the lien, but that work substituted for that called for in the contract may do so. In the former case the contract is unchanged, the work is done without charge to the owner or contractor, and to make good the previous default of the mechanic or material-man; in the latter, the work is done under a contract modified by the agreement of all the parties interested in it.

*Harrison*, 134 Pa. at 565, 19 A. at 804.

In this case, Appellant's owner, Mr. Batra, testified that he drafted the termination agreement, Appellees paid him and,

---

2. The court also accepted the testimony of Appellant's HVAC and mechanical contractor who indicated that although he was not a part of the group of subcontractors invited to the January 7 meeting, it was his recollection that when Appellant was fired, he too ceased work on Appellees' house. He testified further that he returned to work on the house only upon Appellees' direction and following their payment. N.T., 2/29/12, at 43.

in turn, he paid his subcontractors for work performed. N.T., 2/29/12, at 23, 32, 35. He acknowledged that he was at Appellees' property in January 2011 with his subcontractors to address Appellees' complaints with respect to work performed. *Id.* at 26. There is no evidence that Appellant was there in January 2011 to perform "work substituted for that called for in the contract" or that it did any work after December 2010 "under a contract modified by the agreement of all the parties interested in it." *Harrison*, 134 Pa. at 565, 19 A. at 804. Accordingly, Appellant's work was completed as of December 8, 2010, and any activity with respect to Appellees' house after that date fails to operate to extend the date of completion for purposes of determining the timeliness of its mechanics' lien claim.[3] Accepting December 8, 2010 as the date of completion and applying section 1502(a)(1) and Rule 108 together, Appellant had until June 8, 2010 to file its mechanics' lien claim. Because Appellant filed its claim on June 23, 2010, it is untimely. Accordingly, we conclude that the trial court did not err in sustaining Appellees' preliminary objections and dismissing Appellant's claim.

Order affirmed.

---

3. We also note that Appellant argues the trial court did not comport with the standard of review in that if there was any doubt as to the date of completion, preliminary objections should have been overruled. Appellant's Brief at 23. However, on review of the certified record, the only doubt as to the date of completion existed prior to the hearing on Appellees' preliminary objections which raised the completion date as a factual issue. Mr. Batra's own subsequent testimony is un-equivocal that it was his perception that he was fired and that Appellees would use their own contractors to finish the house. The conclusion reached by the trial court that the date of completion was December 8, 2010 relies on Appellant's recollection and is legally sound. As a consequence, we cannot conclude that the trial court's conclusions emanate from factually doubtful circumstances. Therefore, we conclude Appellant's argument to the contrary to be without merit.