**Ata F. JADALLAH, Petitioner,**

v.

**DISTRICT OF COLUMBIA DEPART-
MENT OF EMPLOYMENT
SERVICES, Respondent.**

**No. 83–631.**

District of Columbia Court of Appeals.

Submitted Jan. 26, 1984.

Decided May 8, 1984.

Ata F. Jadallah submitted a pro se brief.

N. Denise Wilson-Taylor, Washington, D.C., was on brief for respondent.

Before FERREN and TERRY, Associate Judges, and REILLY, Chief Judge, Retired.

Concurring statement by Associate Judge FERREN at p. 677.

PER CURIAM.

Petitioner challenges a final decision of the District of Columbia Department of Employment Services (DOES) disqualifying him from unemployment compensation benefits for a ten week period on the ground that he was discharged from his most recent job because of "dishonesty" amounting to "misconduct" within the meaning of D.C.Code § 46–111(b) (1981). *See* 18 DCRR § 4613.3(g) (1982). Petitioner denies he engaged in any dishonest conduct; he maintains he lost his job as the result of an honest mistake. Having reviewed the record, we conclude there is not substantial evidence to support a finding of misconduct. Accordingly, we reverse and remand for further proceedings.

I.

Petitioner worked for eight years as a janitor at the Hecht's department store located at 7th and F Streets, N.W. A representative of Hecht's confirmed that, with the exception of the two incidents that led to petitioner's discharge, petitioner was a satisfactory employee. The basic facts surrounding these two incidents are not disputed.

Hecht's owns a parking garage adjacent to its 7th and F Streets store. The attendants who operate this garage, however, are not Hecht's employees; they work for an independent firm which manages the lot. Hecht's permits its employees to park their cars in the garage at a discount rate of $2.25 per day. To obtain this discount, an employee must have the parking garage ticket stamped at the Hecht's security department.

On two occasions in August 1982, two garage attendants, with aid from petitioner, defrauded Hecht's of a total of $12.05. On one occasion, the attendants gave petitioner two parking tickets and asked him to get the tickets stamped with an employee discount. Petitioner complied with this request, and the attendants then used these stamped tickets as part of their fraudulent scheme. When regular customers paid full price for parking, the attendants substituted the stamped tickets for the customer's tickets, recorded $2.25 collections, and pocketed the difference between the full price and the discount rate. The attendants repeated this fraudulent procedure on a second occasion, again using petitioner to obtain employee discount stamps. When petitioner prepared to leave work on the afternoon of this second incident, one of the garage attendants insisted on charging petitioner only $1.20 for his parking, rather than the $2.25 discount rate to which petitioner was entitled as a Hecht's employee.

At a hearing before a DOES appeals examiner, petitioner testified, without contradiction, that on the morning after the second incident he went to his supervisor at Hecht's and reported the garage attendants' behavior. The supervisor informed petitioner that the attendants were not Hecht's employees and that petitioner should not procure employee discount

stamps for them. After this discussion, petitioner did not provide the attendants with any further stamped tickets.

Approximately two months after these incidents, a representative of Hecht's security department informed petitioner that Hecht's had lost $12.05 as the result of petitioner's actions. Presumably $11.00 of this loss resulted from the attendants' misuse of the improperly stamped tickets, and the other $1.05 resulted from the fact that petitioner was charged only $1.20 for his parking one day. Petitioner testified, again without contradiction, that the security department official told him he could continue working for Hecht's if he would sign a statement acknowledging what had happened and pay Hecht's $12.05. Because petitioner cannot read or write English, the security department official prepared a written statement. Petitioner signed the statement, without knowing precisely what it said, and paid the official $12.05. Petitioner was then taken to the store's personnel office and fired.

The only genuine point of dispute in this case is whether petitioner possessed sufficient knowledge and intent at the time he provided the garage attendants with the stamped tickets to constitute "dishonesty." Petitioner has consistently maintained that at the time of these two incidents he believed the garage attendants were Hecht's employees who were authorized to obtain employee discount stamps on parking tickets. He contends that the attendants told him they were too busy to get the tickets stamped themselves and that he helped them simply as a favor. Petitioner testified at the DOES hearing that he first suspected the attendants of wrongdoing when they charged him only $1.20 for his parking, that after his suspicion was aroused he reported the incidents to his supervisor, and that thereafter he avoided all contact with the attendants.[1]

The only witness to appear at the DOES hearing on behalf of the employer was Mr. Siles, the personnel director at Hecht's 7th and F Streets store. Siles testified that, although it was possible petitioner's conduct resulted from a mistake, he believed petitioner acted intentionally in aiding the garage attendants. Siles based his testimony principally on the written statement prepared by the security department official and signed by petitioner, as well as on oral statements made to him by security department officials who had earlier conducted interviews with the garage attendants. But neither the written statement nor any statement or testimony by a security department official was presented at the hearing.

## II.

DOES disqualified petitioner from receiving benefits for ten weeks pursuant to D.C.Code § 46–111(b) (1981), which provides in relevant part:

> An individual who has been discharged for misconduct occurring in the course of his most recent work proved to the satisfaction of the Board shall not be eligible for benefits with respect to the week for which he first files for benefits and with respect to not less than 6 nor more than 12 consecutive weeks of unemployment which immediately follow such week.[2]

1. On appeal, DOES argues that petitioner's testimony before the appeals examiner reveals that petitioner was aware of the impropriety of his actions at the time he had the tickets stamped. Petitioner testified: "He [the garage attendant] told me, you know, give him a favor you know, I not supposed to you know give him." Although this statement could be read to reflect dishonest intent underlying petitioner's conduct, it could also be read to indicate that petitioner realized—at the time of his testimony—that the favor he innocently rendered was improper. When viewed in the context of petitioner's re-

peated and unambiguous insistence that he acted "unknowingly and without dishonesty," this ambiguity must be resolved in petitioner's favor. In attempting to seize upon a single inarticulately worded statement and use it as an admission of misconduct, DOES's brief to this court mischaracterizes the record.

2. Subsequent to the DOES decision in this case, § 46–111(b) was amended, altering the appropriate period of disqualification for claimants discharged from their most recent work because of misconduct. District of Columbia Unemploy-

More specifically, DOES concluded that Hecht's discharged petitioner because of his "dishonesty," a recognized form of employee misconduct. 18 DCRR § 4613.3(g) (1982).[3] Although this court has not previously had occasion to define the term "dishonesty" for the purpose of disqualification from unemployment compensation benefits, we have discussed the scope of § 46–111(b) and defined misconduct generally.

■ In determining whether an employee has engaged in disqualifying misconduct, DOES cannot simply inquire whether the employer was justified in his decision to discharge the employee: "Not every act for which an employee may be dismissed from work will provide a basis for disqualification from unemployment compensation benefits because of misconduct." *Hawkins v. District Unemployment Compensation Board*, 381 A.2d 619, 622 (D.C.1977) (per curiam). Rather, DOES must employ a "higher standard," under which " '[t]he types of conduct ... for which the misconduct penalty may be imposed impute knowledge to the employee that should he proceed he will damage some legitimate interest of the employer for which he could be discharged.' " *Id.* (quoting *Hickenbottom v. District of Columbia Unemployment Compensation Board*, 273 A.2d 475, 478 (D.C.1971)). In other words, disqualification under § 46–111(b) is appropriate only when "the employee intentionally disregarded the employer's expectations for performance." *Keep v. District of Columbia Department of Employment Services*, 461 A.2d 461, 463 (D.C.1983) (per curiam). "Ordinary negligence" or an honest mistake in judgment "will not suffice as a basis of disqualification for misconduct." *Id.*

DOES' findings in this case are equivocal as to whether petitioner aided the garage attendants in their scheme by mistake or by design. The appeals examiner, whose findings of fact were adopted by the agency, stated: "The record shows that the claimant was aware that he made an obvious mistake in stamping the said tickets." We will treat this as a finding that petitioner knowingly aided the garage attendant and consider whether the record supports such a finding.

### III.

■ Initially, we must recognize our limited role in reviewing final decisions of DOES. We have consistently held that "we should not disturb a decision if it rationally flows from the facts relied upon, and those facts or findings are substantially supported by the evidence of record." *Kramer v. D.C. Department of Employment Services*, 447 A.2d 28, 30 (D.C.1982) (per curiam). While this means we may not substitute our judgment for that of

ment Compensation Act Amendments Act of 1983, D.C.Law 5–3 § 2(q), 30 D.C.Reg. 1378 (1983). This amendment has no effect on the case now before the court.

3. 18 DCRR § 4613.3(g) (1982), promulgated pursuant to D.C.Code § 46–111(b) (1981), provides:
 Misconduct occurring in the course of work includes, but is not limited to, the following:
 (a) Willful violation of employer's rules;
 (b) Intoxication;
 (c) Repeated disregard of reasonable orders;
 (d) Sabotage;
 (e) Gross neglect of duties;
 (f) Insubordination;
 (g) Dishonesty.
 On appeal, DOES virtually ignores the fact that its decision expressly rests on a finding of dishonesty and argues instead that petitioner's disqualification should be affirmed because he willfully violated an employer's rule. We decline to consider this argument for two reasons. First, both the DOES claims deputy and the appeals examiner, whose proposed findings of fact and decision were adopted without change by the agency, relied solely upon a finding of dishonesty pursuant to § 4613.3(g). This court cannot uphold a DOES decision on grounds other than those actually relied on by the agency. *National Geographic Society v. District Unemployment Compensation Board*, 141 U.S.App. D.C. 313, 316 n. 2, 438 F.2d 154, 157 n. 2 (1970). Second, the DOES decision contains no finding that: (1) a relevant employer's rule existed and was known to petitioner; (2) the rule was reasonable; and (3) the rule was consistently enforced. DOES must make a finding as to each of these matters when willful violation of an employer's rule is the basis for a disqualification. 18 DCRR § 4613.4 (1982).

DOES, "[w]e are required to set aside [DOES] holdings if they are not supported by substantial evidence in the record." *Hawkins, supra,* 381 A.2d at 622. The requirement of "substantial evidence in the record," D.C.Code § 1–1510(a)(3)(E), means " 'more than a mere scintilla'. It means such evidence as a reasonable mind might accept as adequate to support a conclusion." *Washington Post Co. v. District Unemployment Compensation Board,* 377 A.2d 436, 439 (D.C.1977) (quoting *Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, 59 S.Ct. 206, 216, 83 L.Ed. 126 (1938)).

█ In the present case, it was not disputed that petitioner's conduct aided the garage attendants in their fraudulent scheme. Evidence of conduct of this type will oftentimes be sufficient to support an inference that the discharged employee intended to engage in wrongdoing and, thus, that disqualification under § 46–111(b) is appropriate. The record in this case, however, does not support such an inference. In light of petitioner's consistent testimony regarding his mistaken belief that the garage attendants were authorized to obtain discount stamps, and his uncontradicted testimony that he promptly and voluntarily reported his suspicions about the attendants' behavior to his supervisor, a reasonable mind could not be persuaded solely by the evidence of petitioner's conduct that he intentionally assisted in the fraudulent scheme.

We therefore must consider whether Hecht's met its burden of producing substantial evidence of misconduct by presenting, in addition to petitioner's conduct, Siles' testimony regarding petitioner's intent. Siles' testimony was not based upon his personal knowledge of events, but rather on a written statement that petitioner signed outside Siles' presence and on reports by security department officials based largely on discussions between these officials and the garage attendants. Because these statements and sources were never produced at the DOES hearing, Siles'

testimony is hearsay in nature. It is therefore necessary to determine whether this hearsay testimony constitutes substantial evidence of petitioner's intent.

█ It is well-established that the technical rules of evidence applicable to the trial of court cases do not govern agency proceedings and that hearsay evidence, if it has probative value, is admissible at administrative hearings. *Kopff v. District of Columbia Alcoholic Beverage Control Board,* 381 A.2d 1372, 1385–86 (D.C.1977); *General Railway Signal Co. v. District Unemployment Compensation Board,* 354 A.2d 529, 531 (D.C.1976); *Wallace v. District Unemployment Compensation Board,* 294 A.2d 177, 179 (D.C.1972). The decision to permit administrative agencies to admit hearsay evidence reflects a recognition that the reliability and probative value of evidence does not always turn simply on whether it falls within the legal definition of hearsay evidence, and that, unlike juries, "agency members are . . . capable of properly assessing the reliability and weight of evidence" that is hearsay in nature. *Kopff, supra,* 381 A.2d at 1385; *see* 3 K. DAVIS, ADMINISTRATIVE LAW TREATISE § 16.4 (1980).

It is one thing to hold that hearsay evidence is admissible at agency hearings, but quite another thing to say that the direct sworn testimony of a witness on a crucial fact can be effectively refuted by hearsay, *i.e.,* the statements of persons not produced as witnesses—and hence not subject to cross-examination—when the party relying on such statements is in a position to call the declarants to the stand.

█ As to the written statement drafted by a Hecht's security official, we conclude that the circumstances surrounding its preparation and signing undermine its reliability. There is no indication in the record that the written statement was made available to petitioner before the hearing. Despite the fact that petitioner placed his signature on the statement, it is clear that he did not read or write English,

and did not know precisely what it said. Under these circumstances, petitioner's sworn testimony before DOES effectively contradicted any inference from the written statement that he deliberately engaged in dishonest conduct. *Contrast Williams, supra,* 383 A.2d at 348 (hearsay allegation properly relied on by agency where petitioner, when confronted with allegation, failed to deny it). In any event, the written statement itself was never made part of the record, and Siles' references to the statement never made clear precisely what it said. On these facts, Siles' testimony based on the written statement was of little, if any, probative value.

Siles' testimony was primarily based on statements made to him outside the hearing by Hecht's security department officials. These nontestifying declarants were not disinterested parties. Insofar as these statements led Siles to believe that petitioner knowingly assisted in the garage attendants' scheme, petitioner directly refuted them under oath. Hecht's offered no explanation as to why the security department officials themselves were not called to testify, and, as with the written statement, Siles made only vague reference to his reliance on these prehearing statements without ever revealing their exact nature. To the extent Siles' testimony relied upon statements made by the garage attendants and then relayed to Siles by security department officials, his testimony was based upon hearsay within hearsay. Reliance upon such an attenuated evidentiary chain, even in administrative proceedings, has been expressly criticized. *Browne v. Richardson,* 468 F.2d 1003, 1006 (1st Cir.1972) ("hearsay based on hearsay," although admissible in agency proceedings, "cannot be the substantial evidence needed to support a finding").

## IV.

Despite this court's traditional deference to the factfinding role of DOES, we find the record in this case too thin to support the agency's findings and conclusions. Accordingly, we reverse and remand for further proceedings consistent with this opinion.

*Reversed and remanded.*

FERREN, Associate Judge, concurring.

I have no disagreement with the approach taken in the opinion for the court, and accordingly I join in that opinion. As the court points out, the fact that hearsay evidence is admissible at an administrative hearing does not alter the requirement that an agency decision be supported by substantial evidence on the record. That requirement is not met where—as in this case—the only record evidence supporting an administrative decision is both hearsay in nature and unreliable. Absent some indicia of reliability, hearsay evidence alone should not be permitted to offset the sworn testimony of a witness and to constitute substantial evidence in support of an agency position. I write (1) to make clear my understanding that the disposition in this case turns on an assessment of the reliability of the hearsay evidence relied on by DOES, and not on an acceptance of the overly rigid and outdated "residuum rule" of administrative procedure; and (2) to set forth standards to guide agencies in the evaluation of the reliability of hearsay evidence.

Despite the potential probative value and well-recognized admissibility of hearsay evidence in agency proceedings, *see ante* at 676, many courts have held that an administrative decision can never rest solely on such evidence. Unless hearsay evidence is corroborated by some residuum of legally competent evidence—evidence that would be admissible in court—courts have held there is not substantial evidence to support an agency decision. For a number of years this rule, referred to as the residuum rule, was the dominant position in most federal [1]

1. *See* 2 K. DAVIS, ADMINISTRATIVE LAW TREATISE § 14.11 (1958); Annot., 6 A.L.R.Fed. 76, § 7 (1971).

and state[2] jurisdictions. Although this court has never expressly adopted the residuum rule, it has stated a general disapproval of agency decisions relying solely on "uncorroborated hearsay." *E.g., Wallace v. District Unemployment Compensation Board,* 294 A.2d 177, 179 (D.C.1972).

During the past 25 years, the residuum rule has come under increasingly heavy criticism. Commentators have found the rule unnecessarily rigid and have argued that the weight properly accorded hearsay evidence, like that accorded other forms of evidence, should range from minimal to substantial based on case-by-case evaluation of the reliability and the probative value of the evidence, not upon wholesale characterization of the evidence as unreliable hearsay.[3] More importantly, a growing number of courts have abandoned the *"per se* approach" of the residuum rule, *e.g., Johnson v. United States,* 202 U.S.App. D.C. 187, 190–91, 628 F.2d 187, 190–91 (1980) (leading case), including those courts responsible for the origin and the past widespread acceptance of the rule.[4]

In place of the residuum rule, courts have adopted a more flexible approach to determining whether uncorroborated hearsay amounts to substantial evidence adequate to convince a reasonable mind to support an agency conclusion. *Johnson, supra,* 202 U.S.App.D.C. at 190–91, 628 F.2d at 190–91. This approach focuses on the "truthfulness, reasonableness, and

credibility" of each item of hearsay relied upon. *Id.; see generally Richardson v. Perales,* 402 U.S. 389, 402–06, 91 S.Ct. 1420, 1427–1430, 28 L.Ed.2d 842 (1971). It is an application of this flexible approach—rather than any reliance on the time-worn residuum rule—that leads me to conclude that the hearsay evidence relied on by DOES in this case does not rise to the level of substantial evidence on the record.

Although this flexible approach rejects any rigid threshold requirement of competent corroborating evidence, it nevertheless recognizes the potential shortcomings of relying on hearsay evidence. An adverse party is unable to cross-examine a nontestifying declarant regarding the substance of a hearsay statement—a right that is recognized as important in the context of administrative proceedings. *General Railway Signal Co. v. District Unemployment Compensation Board,* 354 A.2d 529, 532 (D.C.1976); D.C.Code § 1–1509(b) (1981). Thus, an agency factfinder will not be able fully to explore and evaluate shortcomings in the original declarant's perception, memory, and veracity, as well as any defect in the transmission of information between the original declarant and the testifying witness. Because of these inherent impediments to a factfinder's ability to investigate the reliability of hearsay evidence, a factfinder should look carefully for independent indicia of reliability—which may

**2.** *See* 2 K. Davis, *supra* note 1 at § 14.12; 1 F. Cooper, State Administrative Law 406–10 (1956); Annot., 36 A.L.R.3d 12 § 7 (1971).

**3.** *See e.g.,* 4 B. Mezines, J. Stein & J. Gruff, Administrative Law § 26.02 (1983); 3 K. Davis, Administrative Law Treatise §§ 16.6–.7 (1980); 2 K. Davis, *supra* note 1, §§ 14.10–.11 (1958 & Supps.1970, 1976); 1 F. Cooper, *supra* note 2, 410–11.

**4.** The residuum rule was first enunciated by the New York Court of Appeals in *Carroll v. Knickerbocker Ice Co.,* 218 N.Y. 435, 113 N.E. 507 (1916). The rule received widespread acceptance after it was apparently endorsed in a 1938 decision by the United States Supreme Court. *Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 230, 59 S.Ct. 206, 217, 83 L.Ed. 126 (1938)

("Mere uncorroborated hearsay or rumor does not constitute substantial evidence."). The New York Court of Appeals has now expressly discarded the residuum rule. *300 Gramatan Avenue Associates v. State Div. of Human Rights,* 45 N.Y.2d 176, 179 n. *, 379 N.E.2d 1183, 1185 n. *, 408 N.Y.S.2d 54, 56 n. * (1978). The Supreme Court, while not expressly rejecting the continued validity of the residuum rule, has reinterpreted its language in *Consolidated Edison Co., supra,* as simply a condemnation of hearsay evidence that lacks "rational probative force," rather than a blanket rejection of administrative decisions based on uncorroborated hearsay. *Richardson v. Perales,* 402 U.S. 389, 407–08, 91 S.Ct. 1420, 1430–1431, 28 L.Ed.2d 842 (1971). *See* 3 K. Davis 1980, *supra* note 3, at § 16.07 (*Richardson* moved federal law very close to an unqualified rejection of the residuum rule).

offset concerns about untested perception, memory, veracity and transmission—in determining the weight to accord such evidence.

An agency should, for example, consider whether the witnesses involved were biased or disinterested; whether statements made outside the proceedings were consistent with other evidence; and whether opposing counsel was made aware of, and given access to, the statements before the hearing so as to facilitate verification of, or challenges to, the hearsay statements. *Johnson, supra,* 202 U.S.App.D.C. at 191, 628 F.2d at 191. Some consideration also should be given to the availability of "other and better evidence." *Wallace, supra,* 294 A.2d at 179; *Calhoun v. Bailar,* 626 F.2d 145, 149 (9th Cir.1980), *cert. denied,* 452 U.S. 906, 101 S.Ct. 3033, 69 L.Ed.2d 407 (1981). When the original declarant is readily available and the introduction of hearsay does not result in a more efficient or effective presentation of evidence, the use of hearsay should be discouraged. To the extent that these factors—or other circumstantial guarantees of trustworthiness[5]—bolster the reliability of particular hearsay evidence, that evidence may be relied upon in the same manner as nonhearsay evidence.

In the absence of some assurance of its "truthfulness, reasonableness, and credibility," *Johnson, supra,* 202 U.S.App.D.C. at 190–91, 628 F.2d at 190–91, hearsay evidence should not be given substantial weight. *See Williams v. District Unemployment Compensation Board,* 383 A.2d 345, 348 n. 3 (D.C.1978); *Wallace, supra,* 294 A.2d at 179; *General Railway Signal Co., supra,* 354 A.2d at 531–32; *Hill v. District of Columbia Unemployment Compensation Board,* 281 A.2d 433, 434 (D.C.1971); *see also Hoska v. United*

States Dep't of the Army, 219 U.S.App. D.C. 280, 287–88, 677 F.2d 131, 138–39 (1982). As the opinion of the court points out, when the hearsay evidence relied on here is evaluated in light of the factors discussed above, the record in this case is simply "too thin" to support a conclusion that appellant acted dishonestly.

---

**5.** The ability of judges and other trained fact-finders to evaluate "circumstantial guarantees of trustworthiness" with respect to hearsay evidence is well recognized. *See* Fed.R.Evid. 803(24) and Rule 803 advisory committee note. In the context of the rules of evidence, such guarantees of trustworthiness are the basis for the numerous exceptions to the general rule against the admissibility of hearsay. *Id.* Although the admissibility of hearsay evidence is not restricted in administrative hearings, *ante* at 9, these same types of reliability factors should be considered by agencies in determining what weight is to be given to such evidence.