**Kenneth E. JONES, Petitioner,**

v.

**DISTRICT OF COLUMBIA DEPART-MENT OF EMPLOYMENT SERVICES, Respondent.**

No. 88–918.

District of Columbia Court of Appeals.

Submitted April 18, 1989.
Decided May 12, 1989.

Kenneth E. Jones submitted a brief pro se.

Michael A. Milwee was on the brief, for respondent.

Before MACK and FERREN, Associate Judges, and KERN, Senior Judge.

FERREN, Associate Judge:

Petitioner, Kenneth Jones, seeks review of a decision of the Department of Employment Services (DOES) disqualifying him from unemployment benefits on the ground that his employer discharged him for mis-

conduct. Although petitioner may have violated several of his employer's rules, these violations did not rise to the level of the statutory misconduct required to disqualify him from receiving unemployment compensation. Accordingly, we reverse and remand.

Petitioner, an employee of the Independent Taxi Owners Association (Diamond Cab) for 37 years, was working as a cashier in October, 1987, when he was fired because he had violated several of his employer's rules. Diamond Cab claimed that petitioner had violated its check-cashing policy, had allowed an unauthorized person into the cashier's cage, and had been drinking on the job. A claims examiner denied petitioner's application for unemployment benefits on October 28, 1987, finding that these infractions constituted disqualifying "misconduct" within the meaning of D.C. Code § 46–111(b)(2) (1987). Petitioner appealed. He received a fair hearing at which petitioner and his witnesses, as well as witnesses for Diamond Cab, presented testimony. An appeals examiner denied the appeal on December 18, 1987, concluding that petitioner had "willfully" violated the employer's rules, see 7 DCMR 312.3(a) (1986). The examiner found two independent grounds for denying unemployment compensation: (1) petitioner's failing to follow the employer's check-cashing policy, and (2) his allowing an unauthorized individual into the cashier's cage.[1] The DOES Director affirmed the appeals examiner's decision in a final decision issued on June 30, 1988.

■ Our review of DOES proceedings is limited. This court must defer to the agency's interpretation of the statute it is charged with administering unless it is " 'unreasonable either in light of the record or prevailing law.' " *Hockaday v. District of Columbia Dep't of Employment Servs.*, 443 A.2d 8, 12 (D.C.1982) (citation omitted). However, we will not affirm administrative determinations which are unsupported by substantial evidence in the record, *Jadallah v. District of Columbia Dep't of Employment Servs.*, 476 A.2d 671, 675–76 (D.C.1984), or which reflect a faulty application of the law, *Jones v. District of Columbia Dep't of Employment Servs.*, 553 A.2d 645, 647 (D.C.1989); *Thomas v. District of Columbia Dep't of Labor*, 409 A.2d 164, 169 (D.C.1979). " 'Not every act for which an employee may be dismissed from work will provide a basis for disqualification from unemployment compensation benefits because of misconduct.' " *Jadallah*, 476 A.2d at 675 (quoting *Hawkins v. District Unemployment Comp. Bd.*, 381 A.2d 619, 622 (D.C.1977) (per curiam)). Disqualification is appropriate only when " 'the employee intentionally disregarded the employer's expectations for performance.' " *Id.* (quoting *Keep v. District of Columbia Dep't of Employment Servs.*, 461 A.2d 461, 463 (D.C.1983) (per curiam)). " 'Ordinary negligence' " or "an honest mistake in judgment" do not amount to disqualifying misconduct. *Id.* The "critical inquiry" is whether petitioner was on notice that he could be discharged for his actions. *Colton v. District of Columbia Dep't of Employment Servs.*, 484 A.2d 550, 553 (D.C. 1984).

■ According to the regulations defining statutory misconduct under D.C.Code § 46–111(b)(2) (1987), before a "willful violation of employer's rules" may form the basis for a disqualification, DOES must make a finding that (1) the existence of the employer's rule was known to the employee; (2) the employer's rule is reasonable; and (3) the employer's rule is consistently enforced by the employer.[2] *See* 7 DCMR

---

1. The appeals examiner did not find that Diamond Cab's claim that petitioner drank on the job was an independent ground for the denial of unemployment benefits. Rather, assuming *arguendo* that this claim was subject to a defense of condonation, the examiner premised his decision on the two other violations. Although unnecessary to our resolution of the case, we note that the evidence concerning appellant's drinking at work supports the appeals examiner's assumption.

2. The appeals examiner's decision, which was summarily affirmed by the Director, failed to set forth the required findings regarding the reasonableness and consistent enforcement of the rules that allegedly were violated. While we would ordinarily remand for such findings before affirming a denial of benefits for a "willful

§ 312.4 (1986); *Jadallah,* 476 A.2d at 675 n. 3. The record contains substantial evidence that petitioner had knowledge of the check-cashing policy and that such policy was reasonable. However, the record does not contain substantial evidence that the check-cashing policy was consistently enforced; instead, it reveals inconsistent enforcement.

During the summer-autumn months of 1987, both petitioner and Ms. Blake, the other cashier, were informed of major changes concerning Diamond Cab's check-cashing policy. The new policy required that checks be payable directly to the company; no two-party checks were to be permitted. Furthermore, checks now had to be drawn for the exact amount of the purchase. Finally, the cashiers were ordered to use a TeleCheck system, which Diamond Cab had recently joined, whereby each check would be verified by punching its drawer's social security number into an electronic database.

The facts adduced at the hearing indicated that on September 18, 1987, Blake, who had been employed at Diamond Cab for ten years, received a two-party check for $100 at the cashier's window from a cab driver whose checks she had cashed before the institution of the new policy and who had already filled his tank with gas. Blake, recognizing that she could not use the TeleCheck system because the check lacked the social security number of its drawer, turned to petitioner and asked him what he thought she should do. Petitioner told Blake to go ahead and cash it if she wished. Blake cashed the check, returning approximately $80 to the cab driver. The check bounced.[3] When Diamond Cab fired petitioner, it cited the violation of the check-cashing policy as one independent ground in support of its action. Blake, also a long-term employee, who directly violated the new policy by cashing the check, was not discharged. Differential sanctioning of employees need not always constitute inconsistent enforcement under the statute.

However, we believe the divergent treatment of petitioner and Blake, both seasoned employees who had recently been exposed to a major policy change, was inconsistent for statutory purposes. Having determined that the check-cashing policy was inconsistently enforced, we cannot conclude that petitioner committed statutory misconduct in disregarding it. *See* 7 DCMR § 312.4 (1986).

■ As for petitioner's violation of the policy concerning unauthorized admittance to the cashier's cage, we conclude substantial evidence would support a finding that the policy was known by petitioner and was reasonable. Moreover, we believe there was substantial evidence to support the appeals examiner's finding that petitioner permitted Mr. Gillespie, a past president of the company, who had been fired two years earlier, to enter the cashier's cage. However, because the evidence concerning the enforcement of this policy is minimal, we conclude as a matter of law, in light of the circumstances surrounding the violation, that petitioner's conduct was not so egregious as to constitute statutory misconduct.

In August, 1987, the secretary-treasurer of Diamond Cab informed both petitioner and Blake that, in order to guard against theft, the cashiers should not admit unauthorized persons into the cashier's cage. The employer presented no evidence that anyone had ever been fired for violating this policy; the only testimony on this issue indicated that a company executive who once entered the cashier's cage when apparently unauthorized to do so was not fired but ordered out of the cage. We recognize that the minimal amount of evidence concerning the enforcement of this rule may be due to the relatively short time period in which this policy was in effect before petitioner violated it. In such a case, we believe the circumstances under which the alleged infraction occurred acquire greater significance.

violation" of an employer's rules, *see Jadallah,* 476 A.2d at 675 n. 3, our disposition of the present case makes such a remand unnecessary.

3. The record indicates that the cab driver subsequently attempted to repay the full value of the check to the company.

On October 14, 1987, the former company president, Gillespie, was visiting with the acting president of the company, Mr. Kramer. As the two men stood near the cashier's cage, petitioner called out to Gillespie to go across the street and buy him a six-pack of beer. Gillespie did so. Upon his return, and in full view of Kramer, who was standing beside the door of the cage, Gillespie entered the cage to give petitioner the beer. According to Kramer's own testimony, Gillespie rejoined him in less than two minutes. Under these circumstances, we must conclude that DOES erred as a matter of law in concluding that petitioner's action in permitting Gillespie to enter the cage constituted statutory misconduct. Kramer's presence on the scene, condoning with his silence both. the purchase and the delivery of the beer, renders petitioner's conduct at best permissible and at worst merely negligent.

Because we conclude DOES erred in disqualifying petitioner from receiving unemployment benefits, we reverse and remand for further proceedings.

*Reversed and remanded.*