PER CURIAM.
 

 Arbor Tree Management, Inc., Appellant, appeals from a final order of the Unemployment Appeals Commission (“UAC”) reversing the unemployment appeals referee’s determination that the claimant, Steve Sutton, was discharged for misconduct connected with work. Appellant raises two issues on appeal, only one of which merits discussion. Appellant argues that the UAC improperly found that there was no competent, substantial evidence to support the appeals referee’s findings of fact and conclusion that the claimant’s actions constituted misconduct that would disqualify him from receiving benefits. Because we find the record con
 
 *379
 
 tains competent, substantial evidence to support the appeals referee’s decision, we reverse and remand.
 

 I. Facts
 

 The Agency for Workforce Innovation had determined that the claimant was eligible for unemployment compensation because there was no substantial evidence to show misconduct connected with work. Appellant, the claimant’s employer, appealed the determination, and the case proceeded to a telephonic hearing, where the claimant declined to participate.
 

 At the hearing, the employer had only one witness testify, the employer’s service manager. The service manager testified as follows. The company was an auto repair and sales company. As service manager, he was the claimant’s immediate supervisor. The claimant was a service adviser for the company who received a 100% commission on any repairs he sold to customers. The employer had reprimanded the claimant twice before the incident that led to the claimant being fired. The first written reprimand occurred in 2004, when a co-worker complained that the claimant called her names and used profanity because he felt the co-worker had taken a sale from him that cost him a commission. The service manager did not witness this incident, and the claimant disputed the allegation but signed an agreement that there would be no more future incidents like this one. The second reprimand occurred in 2008, when the service manager wrote up the claimant for adding three days to the time that a customer’s car was in the shop for a warranty repair and adding repairs about which the customer did not complain in order to earn more money from commissions.
 

 The service manager testified as follows about the final incident that led to the claimant’s discharge. Like the 2008 incident, the final incident involved selling unneeded repairs to a customer. A technician complained to the service manager that two other technicians had told him that the claimant sold a motor mount replacement to a customer, even though the two technicians had looked at the part and told the claimant that no replacement was needed. After the service manager had a meeting with the claimant and the three technicians to discover what actually occurred, the claimant informed the service manager that one of the technicians told him that the part needed to be replaced and also told him he had another technician look at the defective part. During the next day, the service manager attempted to corroborate the claimant’s story by asking the technician whether he told the claimant that the part needed to be replaced, and whether he told claimant he had another technician look at it, but the technician denied telling the claimant either of those statements. Because of these conflicting accounts, the service manager questioned the claimant, who “denied that he told [the service manager] that.” The claimant asked the service manager to call the customer to confirm that his story was the correct version. The service manager called the customer, who stated that he accepted all repairs the claimant suggested because the customer was loyal to the company and trusted the claimant. After the service manager’s investigation, the' service manager notified the claimant that he was being discharged because he lied twiee: once to the customer and once to the service manager himself. Lastly, the service manager testified that he examined the part that the claimant instructed to be replaced, and the service manager determined that the part was not damaged and could be reinstalled in another vehicle.
 

 In addition to the service manager’s testimony, the employer introduced two ex-
 
 *380
 
 Mbits. The first was the claimant’s signed acknowledgement form that he received the employee handbook. The second was the portion of the employer’s handbook regarding “Unacceptable Behavior,” which stated that an employee could not be dishonest and, more specifically, an employee was not allowed to fraudulently report repairs for personal gain.
 

 After the hearing, the appeals referee reversed the decision to award the claimant benefits. The appeals referee concluded that the claimant was discharged for misconduct connected with work. The appeals referee reasoned that the claimant had been reprimanded in 2008 for selling unneeded repairs, and the claimant knew or should have known that future dishonest acts would lead to his discharge. Since the claimant knew or should have known that he would be discharged for future dishonest acts, the appeals referee found that the claimant showed a “willful and wanton disregard for the employer’s interest,” which qualifies as “misconduct” under the statute and disqualified the claimant from receiving benefits.
 

 The appeals referee’s decision was appealed to the UAC. The UAC concluded that the appeals referee’s decision was not supported by competent, substantial evidence and reversed the referee’s determination that the claimant was discharged for misconduct connected with work. The UAC noted that the service manager was the employer’s only witness and that most of the service manager’s testimony was hearsay evidence. Specifically, it noted that (a) the customer’s and two technicians’ statements to the service manager were hearsay because none of them provided testimony at the hearing, and (b) the 2004 written reprimand and warning that claimant could lose his job were hearsay because they were not personally issued by the service manager. The UAC stressed that hearsay is not sufficient by itself to support a finding unless it would be admissible over objection in civil actions. While the UAC noted that the service manager testified that the allegedly defective part did not need to be repaired, the UAC concluded that this was not sufficient, competent evidence, in concert with the hearsay evidence, that the claimant committed misconduct. The UAC reasoned that in order to have competent, substantial evidence that the claimant committed misconduct, there would need to be additional evidence that the technicians told the claimant that no repair was necessary and the claimant sold the customer an unneeded repair. As a result, the UAC concluded that the employer failed to meet its burden of proving misconduct and it reversed the appeals referee’s decision.
 

 II. Analysis
 

 When the UAC reviews a referee’s findings, the referee’s findings must be “accorded a presumption of correctness.”
 
 Szniatkiewicz v. Unemp’t Appeals Commn.,
 
 864 So.2d 498, 501 (Fla. 4th DCA 2004). Accordingly, “[t]he UAC’s standard of review of the appeals referee’s decision is whether the referee’s findings of fact were based on competent, substantial evidence in the record and whether the proceedings on which the findings were based complied with the essential requirements of the law.”
 
 Id.
 
 at 501-02. The Florida Supreme Court has defined competent, substantial evidence as evidence that is “sufficiently relevant and material that a reasonable mind would accept it as adequate to support the conclusion reached.”
 
 De Groot v. Sheffield,
 
 95 So.2d 912, 916 (Fla.1957). While hearsay evidence alone cannot be competent, substantial evidence to support a denial of benefits “unless it would be admissible over objection in a
 
 *381
 
 civil proceeding,”
 
 [1]
 
 it is admissible “for the purpose of explaining or supplementing other evidence ... to prove a material fact.”
 
 Tassone v. Unemp’t Appeals Commn.,
 
 662 So.2d 1003, 1004-05 (Fla. 1st DCA 1995). The UAC’s decision is entitled to a presumption of correctness.
 
 Tallahassee Primary Care Assoc. v. Fla. Unemp’t Appeals Comm’n,
 
 930 So.2d 824, 825 (Fla. 1st DCA 2006). However, “[t]he UAC cannot reweigh the evidence and substitute its findings for those of the referee.”
 
 Szniatkiewicz,
 
 864 So.2d at 502. We review
 
 de novo
 
 whether the referee and the UAC correctly applied the law.
 
 See Chapman v. Unemp’t Appeals Comm’n,
 
 15 So.3d 716, 721 (Fla. 1st DCA 2009).
 

 We find there is competent, substantial evidence to support the referee’s findings that (a) the claimant lied to the service manager and (b) the claimant lied to the customer by selling him an unneeded repair. We agree with the UAC that most of the evidence introduced by the employer at the hearing is hearsay, and the UAC correctly stated the law that hearsay cannot be used
 
 by itself
 
 to prove the material facts unless it is admissible over objection in a civil proceeding.
 
 See Tassone,
 
 662 So.2d at 1004-1005. However, in this case, there is competent, substantial evidence in the record, without the service manager’s hearsay testimony, in the form of the claimant’s admissions to the service manager. The service manager testified directly concerning the claimant’s admissions. The claimant’s statements to the service manager were admissible as an exception to the hearsay exclusion rule under section 90.803(18), Florida Statutes (2010), which provides that a statement offered against a party is admissible when it is “[t]he party’s own statement in either an individual or a representative capacity.”
 
 See also Addison v. State,
 
 653 So.2d 482, 484 (Fla. 5th DCA 1995) (“[A] statement, made by a party, and proffered by the opposing party, is admissible whether or not the statement was against his or her interest at the time the statement was made.”). Because the claimant’s admissions are admissible in a civil proceeding, they can be, standing alone, competent, substantial evidence for the two material factual findings that are discussed above.
 
 [2]
 

 The service manager testified as follows regarding the claimant’s admissions:
 

 Mr. Sutton made the comment to me that he came in to me after we — after the meeting that we had had and he told me — that was on that same day, late in the evening, on 4/2 of '10 and told me— that Rudy said the motor mount was stretched and cracked and he had Mike look at it. That was [sic] the two technicians. When I questioned [him], the following day, he denied that he told me that, because I had the technician in here and the technician said he never told him any such thing. And then Mr. Sutton denied that he told me that.
 

 (emphases added). The UAC argues that the claimant may have been merely disagreeing with the service manager’s characterization of what he told the service manager the previous day. However, the proper issue is whether there is competent, substantial evidence to support the referee’s finding,
 
 i.e.
 
 whether the referee relied upon evidence that is “sufficiently relevant and material that a reasonable
 
 *382
 
 mind would accept it as adequate to support the conclusion reached.”
 
 See De Groot v. Sheffield,
 
 95 So.2d 912, 916 (Fla.1957).
 

 Although the service manager’s testimony may be subject to differing interpretations, we find the referee’s interpretation is reasonable, particularly in light of the fact that he heard the testimony live as the trier of fact. While one could argue that the use of the word “that” in the testimony is ambiguous, a reasonable interpretation, as the referee concluded by implication, is that the service manager implied in his statement that the claimant denied stating to him the statements that the claimant told the service manager during the previous day. Moreover, when the appeals referee re-examined the service manager, the service manager testified again that the claimant denied the statements that he told the service manager during the previous day. As a result, we find that this testimony is competent, substantial evidence that the claimant lied to his service manager.
 

 We also find that other record evidence, in concert with the evidence above, was competent, substantial evidence to justify the referee’s finding that the claimant lied to the customer by selling him an unneeded repair. In 2008, the service manager gave the claimant a written reprimand for selling unneeded repairs to a customer and adding three days to the warranty for personal gain. Then, in the most recent incident, the service manager testified that the technicians told him that they told the claimant that no repair was needed. The service manager also testified that when he called the customer after the claimant asked him to do so, the customer stated to him that the claimant told him that the repair was needed. Lastly, the service manager examined the part that the claimant instructed to be replaced, and the service manager determined that the part was not damaged and could be reinstalled in another vehicle. This evidence further corroborates the service manager’s testimony that the claimant lied twice: once to the service manager and once to the customer. Accordingly, we find there was competent, substantial evidence to support the referee’s findings.
 

 We finally address whether the claimant’s actions — selling unneeded repairs to the customer and lying to his service manager — constituted misconduct under the statute. Section 443.036(29), Florida Statutes (2010), provides that “misconduct” includes, but is not limited to, the following:
 

 (a) Conduct demonstrating willful or wanton disregard of an employer’s interests and found to be a deliberate violation or disregard of the standards of behavior which the employer has a right to expect of his or her employee; or
 

 (b) Carelessness or negligence of such a degree or recurrence as to manifest culpability, wrongful intent, or evil design or to show an intentional and substantial disregard of the employer’s interests or of the employee’s duties and obligations to his or her employer.
 

 It is a question of law whether a claimant committed misconduct connected with work.
 
 Saunders v. Unemp’t Appeals Comm’n,
 
 888 So.2d 69, 71-72 (Fla. 4th DCA 2004). The employer has the burden of showing misconduct, and “the employer must show more than an employee’s inefficiency, unsatisfactory conduct, or failure to perform in the workplace.”
 
 Doyle v. Unemp’t Appeals Comm’n,
 
 635 So.2d 1028, 1031 (Fla. 2d
 
 *383
 
 DCA 1994). While “an isolated instance of poor judgment is insufficient to constitute disqualifying misconduct[,]”
 
 [3]
 
 even one act of dishonesty can constitute disqualifying misconduct.
 
 See Meyerowitz,
 
 9 So.3d at 740 (noting that “a single act of dishonesty could constitute sufficient disqualifying misconduct to warrant denial of benefits”);
 
 Johnson v. Unemp’t Appeals Comm’n,
 
 680 So.2d 1073, 1073 (Fla. 5th DCA 1996) (stating that “dishonesty is and should be grounds for dismissal and denial of benefits”).
 

 In this ease, we find that the claimant committed misconduct connected with work as defined in the statute. There were two separate incidents where the claimant lied to the company and a customer about unneeded repairs. The claimant’s lies in these two separate incidents would have injured the company financially if the company had not discovered that the claimant was selling the unneeded repairs. In the most recent incident, the customer would have had to pay for the unneeded repair. The claimant’s actions in lying to his employer and customers about unneeded repairs were clearly dishonest and in disregard of the employer’s interests. Moreover, the handbook placed the claimant on notice that dishonesty, particularly selling unneeded repairs to customers, was taken seriously by the company. Thus, the record evidence demonstrates “[cjonduct demonstrating willful or wanton disregard of an employer’s interests [that is] a deliberate violation or disregard of the standards of behavior which the employer has a right to expect of his or her employee[,]” which is disqualifying misconduct connected with work under the statute. § 443.036(29)(a), Fla. Stat. (2010).
 

 Based on our reasoning set forth above, we reverse and remand for further proceedings consistent with this opinion.
 

 REVERSED and REMANDED.
 

 LEWIS, PADOVANO, and THOMAS, JJ., concur.
 

 [1]
 

 .
 
 See Yost v. Unemp't Appeals Commn.,
 
 848 So.2d 1235, 1237 (Fla. 2d DCA 2003).
 

 [2]
 

 . However, as discussed below, there is additional evidence that supports the referee's findings.
 

 [3]
 

 .
 
 Meyerowitz v. Unemp't Appeals Comm’n,
 
 9 So.3d 738, 740 (Fla. 4th DCA 2009).