LaShawn P. TYLER, Petitioner,

v.

GEORGE WASHINGTON MEDICAL
FACULTY ASSOCIATES,
Respondent.

No. 11–AA–1127.

District of Columbia Court of Appeals.

Argued March 5, 2013.
Decided Sept. 12, 2013.

Ryan C. Morris, Washington, DC, for petitioner.

Raymond C. Baldwin, Washington, DC, with whom Virginia E. Robinson was on the brief, for respondent.

Before EASTERLY and McLEESE, Associate Judges, and FERREN, Senior Judge.

McLEESE, Associate Judge:

An Administrative Law Judge ("ALJ") at the Office of Administrative Hearings ("OAH") found that petitioner LaShawn P. Tyler was disqualified from receiving cer-tain unemployment-compensation benefits, because she had been terminated from her job with George Washington Medical Faculty Associates ("GWMFA") for misconduct. On review, Ms. Tyler contends that the ALJ erred as a matter of law in finding that she committed misconduct and that GWMFA should be equitably estopped from asserting that Ms. Tyler committed misconduct. We vacate and remand for further proceedings.

## I.

After holding an evidentiary hearing, the ALJ found the following. Ms. Tyler worked for GWMFA at George Washington University Hospital as a Front End Patient Service Specialist. In May 2010, a patient's financial information was stolen at the hospital and used to make transactions. GWMFA's Patient Relations Manager and Privacy Officer, Keisha Mullings–Smith, investigated the matter. As part of the investigation, Ms. Mullings–Smith interviewed all staff members who had access to the patient's file or worked in the area where the incident occurred.

GWMFA had a policy prohibiting employees from discussing matters under investigation, in part to prevent interviewed employees from influencing employees who had not yet been questioned. Before Ms. Tyler was interviewed, her co-worker Kenyetta Howard was questioned by Ms. Mullings–Smith. Soon thereafter, Ms. Howard revealed to Ms. Tyler information about her interview and the pending investigation, including that the matter concerned stolen credit-card information. Ms. Tyler subsequently told her supervisor, Cynthia Leonard, that Ms. Howard had shared this information with her.

The next morning, Ms. Mullings–Smith interviewed Ms. Tyler. At the conclusion of the interview, Ms. Mullings–Smith

asked Ms. Tyler whether she had talked with anyone about the investigation or about Ms. Howard's interview of the prior day. Ms. Tyler replied that she had not discussed that information.

Following the interview, Ms. Leonard reported to Ms. Mullings–Smith that Ms. Tyler had in fact previously discussed with others the investigation and Ms. Howard's interview. After speaking with Ms. Leonard, Ms. Mullings–Smith interviewed Ms. Tyler a second time, on the same day as Ms. Tyler's initial interview. Ms. Mullings–Smith specifically asked Ms. Tyler whether she had learned any information from Ms. Howard about Ms. Howard's interview. Ms. Tyler once again responded that she had not. Ms. Tyler also stated that she did not recall making statements to anyone else concerning Ms. Howard's interview.

Following Ms. Tyler's second interview, Ms. Mullings–Smith indicated to Ms. Tyler that Ms. Mullings–Smith would allow Ms. Tyler to change her previous statements and would "honor a new statement." The same day, Ms. Mullings–Smith interviewed Ms. Tyler a third time. At that point Ms. Tyler admitted that Ms. Howard had discussed the details of her interview and that Ms. Howard had told Ms. Tyler that the investigation related to credit-card theft. Ms. Tyler apologized for her actions and explained that she was initially untruthful because she feared that her co-workers would be fired. GWMFA subsequently terminated Ms. Tyler for failure to be truthful during an internal investigation.

The ALJ found that Ms. Tyler's actions constituted simple but not gross misconduct, concluding that although Ms. Tyler's behavior was not serious and did not significantly harm GWMFA, her dishonesty was a breach of her duties as an employee.

## II.

We affirm an agency decision if the decision contains findings on each material, contested issue of fact; substantial evidence supports each factual finding; the decision's legal conclusions flow rationally from the factual findings; and the decision is not arbitrary, capricious, an abuse of discretion, or otherwise contrary to law. *Berkley v. District of Columbia Transit, Inc.*, 950 A.2d 749, 759 (D.C.2008). "We defer to the ALJ's factual findings if they are supported by substantial evidence, but legal conclusions, including whether a fired employee's conduct constitutes misconduct, are reviewed *de novo.*" *Johnson v. So Others Might Eat, Inc.*, 53 A.3d 323, 326 (D.C.2012).

## III.

An employee whose termination was the result of misconduct is disqualified from receiving certain unemployment-compensation benefits. *See* D.C.Code § 51–110 (2012 Repl.). Misconduct is not defined in the statute. The applicable regulations define "gross misconduct" as "an act which deliberately or willfully violates the employer's rules, deliberately or willfully threatens or violates the employer's interests, shows a repeated disregard for the employee's obligation to the employer, or disregards standards of behavior which an employer has a right to expect of its employee." 7 DCMR § 312.3 (2013). Examples of gross misconduct include dishonesty and insubordination. 7 DCMR § 312.4(e), (f). "Other than gross misconduct," also known as simple misconduct, is defined as "an act or omission by an employee which constitutes a breach of the employee's duties or obligations to the employer, a breach of the employment agreement or contract, or which adversely affects a material employer interest." 7 DCMR § 312.5. Simple misconduct in-

cludes actions "where the severity, degree, or other mitigating circumstances do not support a finding of gross misconduct." *Id.*

 Read broadly, the regulations might seem to permit a finding of misconduct based on virtually any conduct that falls short of an employer's reasonable expectations. *See Capitol Entm't Servs., Inc. v. McCormick,* 25 A.3d 19, 24–25 (D.C. 2011). It is well settled, however, that the regulations are not to be read so broadly. *Id.* Because our unemployment-compensation law was designed to protect employees from the consequences of temporary unemployment, we read the definition of misconduct with an eye towards the statute's humanitarian purpose. *Id.* at 27. Thus, under this court's cases, a finding of misconduct requires more than that "the employer was justified in his decision to discharge the employee." *Jadallah v. District of Columbia Dept. of Emp't Servs.,* 476 A.2d 671, 675 (D.C.1984). More than mere negligence by an employee is required for a finding of misconduct. *Capitol Entm't,* 25 A.3d at 27. Rather, there must be "[i]ntentionality or conscious disregard amounting to recklessness." *Id.* at 26; *see also id.* at 28 ("misconduct may be demonstrated by . . . an intentional and substantial disregard of the employer's interest or of the employee's duties and obligations to the employer") (internal quotation marks omitted).

In this case, Ms. Tyler lied to a fellow employee who was investigating an important matter. The lie was about whether employees had violated a reasonable policy of GWMFA, and was in response to a question that was potentially of significance to the investigation. Barring mitigating circumstances, such a lie in our view should normally be viewed as misconduct, because it shows "an intentional and substantial disregard of the employer's in-

terest." *Capitol Entm't,* 25 A.3d at 28; *cf.* 7 DCMR § 312.4 (listing dishonesty as form of gross misconduct). It is true, as Ms. Tyler points out, that this court's unemployment-compensation cases finding misconduct based on false statements have arisen in circumstances more aggravated than those of this case. Nothing in the holdings or the reasoning of the cases upon which Ms. Tyler relies, however, suggests that additional aggravating circumstances are required for a material, work-related lie to one's employer to support a finding of misconduct. Courts in other jurisdictions have found misconduct in contexts comparable to those of this case. *See, e.g., In re Barton,* 92 A.D.3d 1011, 937 N.Y.S.2d 719, 719 (2012) (employee who discussed employer's internal investigation when instructed not to, and lied about having discussed investigation, committed disqualifying misconduct); *Lewis v. Director,* 90 Ark. App. 219, 205 S.W.3d 161, 163–64 (2005) (upholding denial of unemployment benefits based on misconduct; employee's untruthful response to question about whether bank procedures were followed, asked during internal investigation into whether deposit bags were missing, was "dishonesty and an intentional disregard for her obligations as well as her employer's interest"); *White v. Employment Appeal Bd.,* 448 N.W.2d 691, 692 (Iowa Ct.App.1989) (employee's lack of candor during interview about workplace incident constituted disqualifying misconduct).

In contrast, Ms. Tyler cites no remotely similar case, either from this jurisdiction or elsewhere, holding that a material, work-related lie did not constitute misconduct. The cases on which Ms. Tyler does rely are factually quite different from the present case. *See Jones v. District of Columbia Dept. of Emp't Servs.,* 558 A.2d 341, 344 (D.C.1989) (single act of giving

access to unauthorized person did not constitute misconduct, where acting company president seemed to condone employee's act, there was minimal evidence of enforcement of employer's policy, and employee's conduct was "at best permissible and at worst merely negligent"); *Jadallah*, 476 A.2d at 677 (no substantial evidence that employee intended to act dishonestly); *Green v. District of Columbia Unemp't Comp. Bd.*, 273 A.2d 479, 480 (D.C.1971) (employee who notified supervisors of absence from work due to personal business did not commit misconduct, because no company rule required request be accompanied by detailed and specific reasons, and company had not consistently required such reasons before excusing absences).

Ms. Tyler contends that her lie could not constitute misconduct, because the lie (1) did not harm GWMFA,[1] (2) was an isolated occurrence, (3) did not implicate a core job responsibility, and (4) was not serious in nature. We find these arguments unpersuasive.

First, this court has not held that actual harm to the employer is essential to a finding of misconduct. The applicable regulations point strongly in the other direction, listing harm to the employer as one of several alternative bases for a finding of misconduct. *See* 7 DCMR § 312.5. In fact, a requirement of actual harm would make no sense. An employee who drives a company vehicle while intoxicated, for example, has surely committed disqualifying misconduct, even if no accident or injury occurs as a result of the employee's actions. In this case, although Ms. Tyler's lie did not cause significant harm to GWMFA, such lies do pose a risk of interfering with investigations. More generally, material, work-related lies by their nature damage the employee-employer relationship, thus causing harm to the employer, because employers need to be able to expect honesty from their employees. *See, e.g., Bloom v. McHugh*, 828 F.Supp.2d 43, 53 (D.D.C.2011) ("[A]n agency has a right to expect its workers to be honest, trustworthy, and candid[,] and ... a lack of candor strikes at the very heart of the employer-employee relationship.") (internal quotation marks omitted); *Kansas City v. Arthur*, 998 S.W.2d 870, 876 (Mo.Ct.App.1999) ("The employer has a right to expect basic honesty about an issue which the employee knows is important to the employer."); *Stanulus v. Budd*, 1 Ill.App.2d 334, 117 N.E.2d 655, 656 (1953) ("[A]n employer has the right to expect of his employees, regardless of the kind of work performed by them, the qualities of truthfulness, honesty and integrity, and it would follow that the lack of such qualities manifestly would be detrimental to the operation of an employer's business.").

Second, neither the statutory text nor the regulations support a contention that repeated behavior is required for a finding of misconduct based on an intentional falsehood. This court's cases involving intentional false statements have not insisted on repeated conduct. *See, e.g., Walker v. District of Columbia Dept. of Emp't Servs.*, 729 A.2d 887, 888 (D.C.1999); *Pitts v. District of Columbia Dept. of Emp't Servs.*, 497 A.2d 1060, 1061 (D.C.1985). And, as we have already noted, courts in other jurisdictions have found misconduct based on single incidents similar to the incident in this case. *See generally Arbor Tree Mgmt., Inc. v. Florida Unemp't Appeals Comm'n*, 69 So.3d 376, 383 (Fla.Dist.Ct. App.2011) ("While an isolated instance of

---

**1.** Although Ms. Tyler repeatedly states that the ALJ found that Ms. Tyler's lie did not harm GWMFA, in fact what the ALJ found was that Ms. Tyler's conduct did not interfere with the investigation and caused no "serious harm" to GWMFA.

poor judgment is insufficient to constitute disqualifying misconduct[,] even one act of dishonesty can constitute disqualifying misconduct.") (footnote and internal quotation marks omitted; brackets in *Arbor Tree*); *cf. Dailey v. Bd. of Review, West Virginia Bureau of Emp't Programs*, 214 W.Va. 419, 589 S.E.2d 797, 806 (2003) (employee engaged in simple misconduct by failing to indicate that his driver's license was suspended and by permitting employer to believe that he had valid license).

Third, the statute and regulations do not require that misconduct implicate a "core job responsibility," however that phrase might be defined. Moreover, giving truthful answers to relevant questions posed by an employer during an investigation into serious allegations would seem to constitute a basic duty of an employee.

Finally, Ms. Tyler relies heavily on the ALJ's statement that Ms. Tyler's lie "was not serious or egregious." We review de novo the question whether a terminated employee's conduct constituted misconduct. *Johnson*, 53 A.3d at 326. For reasons previously stated, we conclude that, barring mitigating circumstances, this sort of dishonesty during an internal investigation is sufficiently serious as to constitute misconduct.

## IV.

Ms. Tyler makes two additional arguments in support of her contention that her lie did not constitute misconduct. First, she contends that the lie "resulted from her supervisor's instructions." Second, she argues that GWMFA should be equitably estopped from claiming that she committed misconduct, because its employee told Ms. Tyler that she could amend her earlier statements and that GWMFA would "honor" any amended statement.

■ GWMFA initially contends that those arguments were not properly raised before the ALJ. We disagree. Although Ms. Tyler, who was pro se before the ALJ, did not use legal terms such as "wrongful intent" or "estoppel" during her testimony, we conclude that she sufficiently raised the contention that a finding of misconduct was unwarranted because her lie was the result of instructions from her supervisor and because she had in essence been promised that she would not be punished if she amended her earlier statements.

■ On the merits, we conclude that both of these arguments should be addressed in the first instance by the ALJ. As to Ms. Tyler's claim that she was following her supervisor's instructions, the ALJ did not make a factual finding about Ms. Tyler's testimony that her supervisor told her not to tell anyone that Ms. Tyler and the supervisor had discussed the investigation. A finding of misconduct is not necessarily foreclosed simply because the employee was following a supervisor's directions. *See, e.g., Temple Univ. v. Unemployment Comp. Bd. of Review*, 565 Pa. 178, 772 A.2d 416, 419 (2001) (employee's falsification of time sheets was willful misconduct, even though done with approval of supervisor). But the fact that an employee was following the directions of a supervisor, if established, could be quite relevant in some circumstances to the question whether the employee's conduct rose to the level of misconduct. *See, e.g., Whitted v. Division of Emp't Sec.*, 306 S.W.3d 704, 707 (Mo.Ct.App.2010) (employee's violation of employer's policy not misconduct because employee was following direction of supervisor). Because the ALJ did not make the necessary factual findings, and therefore has not considered the possible significance of this issue, we conclude that the case must be remanded for further proceedings. *See, e.g., Morris v.*

*United States Envtl. Prot. Agency,* 975 A.2d 176, 181 (D.C.2009) ("If the agency fails to make a finding on a material, contested issue of fact, this court cannot fill the gap by making its own determination from the record, but must remand the case for findings on that issue.") (internal quotation marks omitted).[2]

With respect to Ms. Tyler's equitable-estoppel claim, the ALJ made the relevant factual findings, concluding that Ms. Tyler was told that she would be permitted to change her previous statement and that GWMFA would honor a new statement. This court does not appear to have previously addressed an issue of equitable estoppel in the context of worker's compensation. Moreover, the parties do not cite, and we have not found, authority from other jurisdictions directly addressing the issue. *Cf. Ramsey v. Employment Sec. Agency,* 85 Idaho 395, 379 P.2d 797, 801–02 (1963) (addressing question whether employee's admission of unknowingly violating employer policy constituted misconduct; admission was provided in response to offer of amnesty). Under the circumstances, we conclude that the ALJ in the first instance should consider the potential significance of the investigator's statements to Ms. Tyler.[3] *See, e.g., District of Columbia Dept. of Env't v. East Capitol Exxon,* 64 A.3d 878, 882 (D.C.2013) (remanding for OAH to address legal issue OAH had "not yet wrestled with or specifically ruled upon").

We therefore vacate the order of the ALJ and remand for further proceedings.

*So ordered.*

---

2. GWMFA contended at oral argument that the court should infer that the ALJ discredited Ms. Tyler's testimony. Conversely, relying on *Hamilton v. Hojeij Branded Food, Inc.,* 41 A.3d 464 (D.C.2012), Ms. Tyler contended at oral argument that this court should accept Ms. Tyler's testimony because it was uncontradicted. We do not agree with either contention. We see no reason to infer an adverse credibility finding from the ALJ's silence. Nor do we believe that *Hamilton* requires this court to credit Ms. Tyler's testimony. The court in *Hamilton* found it unnecessary to remand for a credibility determination on an issue as to which the employee's testimony was both uncontradicted and supported by documentary evidence. *Hamilton,* 41 A.3d at 482. Ms. Tyler's testimony on this point was not supported by documentary evidence. Moreover, *Hamilton* does not stand for a sweeping rule that remand is unnecessary whenever an ALJ fails to make a finding as to uncontradicted testimony. *See, e.g., Belcon Inc. v. District of Columbia Water & Sewer Auth.,* 826 A.2d 380, 385–87 (D.C.2003) (remanding for further proceedings where agency made no finding about credibility of uncontradicted testimony); *Bennett v. Unemployment Comp. Bd. of Review,* 33 A.3d 133, 139 n. 6 (Pa. Cmwlth.2011) (agency factfinder has authority to discredit even uncontradicted testimony).

3. The ALJ may also consider the question whether, even if the doctrine of equitable estoppel is not applicable, the investigator's statement to Ms. Tyler can properly be viewed as a mitigating circumstance in determining whether Ms. Tyler's conduct amounted to misconduct.