564 A.2d 720 (1989)
Hun Kim LIM, Petitioner,
v.
DISTRICT OF COLUMBIA TAXICAB COMMISSION, Respondent.
No. 87-1122.
District of Columbia Court of Appeals.
Argued March 21, 1989.
Decided September 22, 1989.
Lawrence D. Levien, with whom Dawn E. Starr and Julie A. Boesky, Washington, D.C., were on brief, for petitioner.
*721 Martin B. White, Asst. Corp. Counsel, with whom Frederick D. Cooke, Jr., Corp. Counsel at the time the brief was filed, Charles L. Reischel, Deputy Corp. Counsel, and Lutz Alexander Prager, Asst. Deputy Corp. Counsel, Washington, D.C., were on the brief, for respondent.
Before NEWMAN and SCHWELB, Associate Judges, and KERN, Senior Judge.
NEWMAN, Associate Judge:
The District of Columbia Taxicab Commission (Commission) found appellant Lim, a licensed Virginia taxicab driver, guilty of unlicensed hacking, for transporting a passenger within the District of Columbia in violation of a Reciprocity Agreement entered into between Washington, D.C. and Virginia. This agreement provides that a taxicab driver licensed in one jurisdiction cannot transport a passenger within the boundaries of the other jurisdiction although a driver may enter the other jurisdiction to pick up a prearranged fare returning to the driver's jurisdiction.
Lim advances three grounds for reversal: that the newly-created Commission does not have jurisdiction to regulate the flow of interstate taxi travel pursuant to the Reciprocity Agreement, that the Commission's finding was based on insubstantial and hearsay evidence, and that the Commission acted arbitrarily and capriciously in its handling of Lim's case. We affirm.

I
Early on a hot summer morning in July, 1987, Hun Kim Lim drove a passenger from a hotel in Rosslyn, Virginia to the corner of 19th and F Streets, N.W., in the District of Columbia. Lim operated his own taxicab as part of the Arlington Yellow Cab fleet and was fully licensed in accordance with Virginia law. Lim testified before the Taxicab Commission that on the way into the District the passenger, who apparently was enjoying his air-conditioned ride, had asked Lim if he would return to 19th and F Streets at around 11:30 a.m., or "perhaps a little earlier" to take him back to his hotel in Rosslyn and then to National Airport.[1] Lim agreed and in the meantime returned to Virginia where he picked up a few other fares. According to his manifest, he left the Pentagon at 10:30 a.m. to return to 19th Street, where he waited in his parked cab and, upon seeing the passenger with whom he had the alleged prearrangement, drove to where he stood.
Lim's taxi was immediately stopped by Hack Inspector Smith; the citation noted the time as 10:54 a.m. Smith was working in conjunction with a special check-point at the corner of 19th and F Street to check all taxis for proper registration, identification, and driver's permits. At Lim's hearing, Smith testified that Lim's passenger stated that he wanted to go to "Northwest New Hampshire Avenue." Smith also testified that when stopped, Lim stated, "Well, I won't do it no more this time, just forgive me." Smith ordered the passenger out of the car, and put him in a D.C. taxi. The passenger's name, telephone number and address were not recorded; no effort was made to contact this passenger, and he did not testify at Lim's hearing.
Smith failed to request Lim's manifest for that day since, according to Smith, the passenger told him that he wanted to go to Northwest New Hampshire Avenue. Lim later provided a copy of that day's manifest, which showed the prearranged fare. A representative from Lim's taxicab company testified that the $11.00 anticipated fare would have justified Lim's efforts.
Lim was charged with two violations including operating a taxicab in the District without a valid D.C. hacker's license in violation of 18A DCMR § 822.2 (1987)[2] and *722 operating an unauthorized vehicle within the District of Columbia in violation of 18A DCMR § 822.3 (1987).[3]
Lim appealed the citations to the Commission and a hearing was held on September 16, 1987. Prior to oral argument, the Commission acknowledged that it would allow Lim's counsel to submit a brief at a later date after he had an opportunity to review the hearing transcript. At the same time, the Commission allowed counsel to submit an eight page written motion and memorandum to dismiss the proceedings. At the end of the oral hearing, Lim's counsel renewed his request to file a brief, a request that was apparently relied upon by counsel for the District as well:
LIM'S COUNSEL: Again, I would request the opportunity to submit a brief unless the Commission sees fit simply to dismiss the case. That is fine for [Lim]. I want the opportunity to argue credibility and make a submission of the facts based upon the official transcript of the proceeding.

COMMISSIONER: Very well, Mr. Kassouf [District Counsel], do you wish to make a closing statement?
DISTRICT COUNSEL: In light of his request, I will just make a response to his brief.
The Commission agreed to allow both parties to file briefs.
Immediately thereafter, the Commission convened elsewhere to consider the case and returned with a decision that Lim was guilty of hacking without a license, and dismissed the unlicensed vehicle charge. Lim's counsel was then told that he could still file a brief, but that it would serve as a motion for reconsideration. The written findings of the Commission were issued four months later, after counsel had filed a notice of appeal.

II.
The first question we must address is whether the Taxicab Commission had jurisdiction to hear Lim's case. Lim contends that because this case involved a violation of a 1962 Reciprocity Agreement with Virginia, the Commission, a local District of Columbia agency, does not have jurisdiction to regulate the interstate conduct of Virginia taxicabs. We disagree.
The Commission was established in 1986 pursuant to the "Taxicab Commission Establishment Act" of 1986 (Act). D.C.Code §§ 40-1701-40-1720 (1986 & Supp.1989). The Act clearly vests the Commission with jurisdiction over the intrastate regulation of taxicabs. D.C.Code § 40-1704 (1986);[4]Onabiyi v. District of Columbia Taxicab Commission, 557 A.2d 1317, 1318 (D.C. 1989) (Commission has exclusive authority to regulate intrastate taxicabs). The Act also authorizes the Commission to enforce all provisions of the Act including the provision barring unlicensed hacking. Onabiyi, supra, 557 A.2d at 1319; see also D.C. Code § 40-1719(a).[5]
In 1962, long before the creation of the Commission, the District entered into a reciprocal agreement with Virginia, under which interstate taxi travel between Virginia and the District would be governed. Specifically, the Reciprocity Agreement states:
Taxicabs registered in one jurisdiction and entering the other jurisdiction for the purpose of discharging passengers will not be permitted to pick up or transport passengers intrastate.
Taxicabs registered in one jurisdiction will be permitted to enter the other jurisdiction *723 to pick up passengers on telephone calls or prearrangement.
Reciprocity Agreement § 7(b), (c). Evidently, enforcement of this provision has rested historically with the District of Columbia Metropolitan Police Department.
Based on the foregoing provisions, the Commission found Lim guilty of violating D.C. Municipal Regulation 822.2, which prohibits unlicensed hacking. The Commission concluded, we think correctly, that:
Virginia and D.C. reciprocity rules ... clearly show that pre-arranged and radio transmitted pick-ups of an out of state taxicab to another jurisdiction are allowed. However, the cab may only transport the passenger back to the cab's home jurisdiction; otherwise the driver has made an illegal and unauthorized intrastate trip for hire, which is construed as unlicensed hacking.
Thus, since the authority for a Virginia taxi to travel within the District is granted through the Reciprocity Agreement, violation of that agreement will constitute unlicensed hacking, which is interdicted by 18A DCMR § 822.2.
The Commission's decision is fully consistent with D.C.Code § 40-1719(a). This section provides that taxi drivers must be licensed pursuant to an applicable D.C. license "or in the event of licensure by another jurisdiction pursuant to reciprocal agreement," see D.C.Code § 40-1719(a), and that enforcement of this provision rests with the Commission. See Onabiyi, supra, 557 A.2d at 1319. There exists no reason why the District and Virginia cannot, if they so choose, enter into an interstate agreement whose terms will be enforced independently by the two jurisdictions within their respective boundaries.[6] Once that provision is violated, the licensed Virginia driver is no longer licensed for purposes of hacking within the District.
Finally, the Commission's interpretation of the Act and the underlying regulations is fully consistent with the legislative history of the Act, which strongly emphasizes that the purpose of the Act was to consolidate "the District's regulation of the taxicab industry in one agency of government. In effecting this purpose the bill proposes to abolish fragmented governmental authority over taxicabs and establishes a District of Columbia Taxicab Commission."[7] THE REPORT OF THE COMMITTEE ON PUBLIC SERVICES AND CABLE TELEVISION, D.C.Law 6-97, on Bill 6-159, at 1 ("Committee Report"); see also Onabiyi, supra, 557 A.2d at 1318. Indeed, the Committee Report highlights centralization as the only purpose of the bill in order to effectuate the organized and efficient development of taxi services in the District.[8]

*724 III.
We next address the question of whether the Commission's decision was supported by substantial evidence. An agency decision must be accompanied by written findings of fact and conclusions of law based on substantial evidence. Citizens Association of Georgetown, Inc. v. District of Columbia Zoning Commission, 402 A.2d 36, 41 (D.C.1979); D.C.Code § 1-1509(e) (1979); accord, Grant v. District of Columbia, 545 A.2d 1262, 1264 (D.C.1988); Nova University v. Educational Institution Licensure Commission, 483 A.2d 1172, 1190 (D.C.1984), cert. denied, 470 U.S. 1054, 105 S.Ct. 1759, 84 L.Ed.2d 822 (1985); Saunders v. Police & Firemen's Retirement & Relief Board, 444 A.2d 16, 18 (D.C.1982). To determine whether substantial evidence exists, we must apply a three-pronged test: 1) there must be findings on each contested issue of fact, 2) the decision rationally must follow from the facts, and 3) there must be sufficient evidence supporting each finding. Citizens Association, supra, 402 A.2d at 41 (citations and footnotes omitted); see also Ahmed v. District of Columbia Hackers License Appeal Board, 501 A.2d 415, 416 (D.C.1985); Scott v. Police & Firemen's Retirement & Relief Board, 447 A.2d 447, 449 (D.C.1982).
The present dispute centers on whether Lim had a prearranged agreement with the passenger to return him to Virginia, or whether Lim violated the Reciprocity Agreement by agreeing to carry the passenger to another location within the District. Lim asserts that the Commission erred by crediting Smith's testimony, since it included a component of hearsay  that Smith heard the passenger say that he wanted to go to "Northwest New Hampshire Avenue."[9]
Hearsay evidence is admissible in administrative proceedings unless it is "irrelevant, immaterial or unduly repetitious." D.C.Code § 1-1509(b) (1987); see Martin v. District of Columbia Police & Firefighters' Retirement & Relief Board, 532 A.2d 102, 109 (D.C.1987). Although this court has adopted a flexible approach that rejects any rigid threshold requirement of competent corroborating evidence, "administrative findings and conclusions based exclusively on hearsay [are subject] to exacting scrutiny." Id. at 109-10 n. 2. Further, the agency, without explanation can credit one witness' testimony over that of another, Don't Tear It Down, Inc. v. District of Columbia Department of Housing, 428 A.2d 369, 378 (D.C.1981), although "[r]eversal may be warranted if an agency places undue confidence in hearsay evidence that is too unreliable to justify the weight given to it." Martin, supra, 532 A.2d at 109 (citing Jadallah v. District of Columbia Department of Employee Services, 476 A.2d 671, 676-77 (D.C.1984) (per curiam)).
Based on this record, we cannot find that the Commission erred in crediting Hack Inspector Smith's testimony. No reason is advanced to suggest that it was unreliable or that Smith had any reason to lie or fabricate his version of events. Lim emphasizes that Smith's testimony is unreliable because he could not recall other details of the day, such as the exact number of cabs that he stopped or the physical attributes of the passenger in question. Smith was engaged in an extensive operation to check all cabs in the area; he remembered specifically that he issued eight citations that day. We are not persuaded that his inability to remember all of the specific details of this day makes his testimony regarding this particular passenger's destination unreliable as a matter of law. Indeed, with regard to Lim's stop, Smith remembered that he observed the passenger unsuccessfully attempt to hail several taxis before Lim picked him up. Smith also remembered that, upon being stopped, Lim apologized and promised that he would not transport passengers within the District again.
Considering the record as a whole, we cannot say that the Commission erred in crediting Smith's version rather than the one given by Lim. However, we again *725 note our concern about the reliance upon hearsay contradicted by sworn testimony. In this case, Smith failed to record the passenger's name, telephone number, and address. An administrative agency should not rely on hearsay to refute sworn testimony, when the party relying on the hearsay is able to call the declarant to the stand. See Jadallah, supra, 476 A.2d at 676.[10] We reemphasize that point today.[11] Verification of the passenger's destination seems a minimal, yet necessary procedure, given the nature of the competing interests between the hack inspector, whose job is to ferret out unlicensed hacking (and whose position may carry with it an implicit legitimacy when it comes to hearsay disputes), and the taxicab driver whose livelihood may be at stake.

IV.
The final issue presented by this appeal is whether the Commission acted arbitrarily and capriciously in its handling of Lim's case. Although we conclude that it did not, we urge this newly created Commission to adhere closely to fair, consistent, and orderly adjudicative procedures.
Lim advances several arguments to support the fact that the Commission acted arbitrarily and capriciously. Specifically, he asserts: 1) that the Commission has a practice of issuing written orders only when an appeal is taken from one of its oral rulings, 2) that the Commission arbitrarily dismissed one of the charges against Lim based on a misconception of the facts, and 3) that Lim was prejudiced by the Commission's refusal to accept a post-hearing brief after it explicitly stated that it would do so. We briefly address each of these contentions.
First, Lim complains of irregularities in the process through which the Commission issues written orders. Most notably, Lim argues that the Commission issues oral decisions from the bench and then follows with written findings of fact and conclusions of law only if and when an appeal from the Commission's decision is taken. To substantiate his claim, Lim asserts that it was not until an appeal had been filed in this case and the companion case, that the Commission issued final written decisions. On this record, we cannot tell whether this contention is factually supported. We do note, however, that the Commission is under an obligation in every instance to issue written findings of fact and conclusions of law.[12]See D.C.Code § 1-1509(e) ("[E]very *726 decision and order adverse to a party to the case, rendered by the Mayor or an agency in a contested case, shall be in writing and shall be accompanied by findings of fact and conclusions of law.").
Second, Lim argues that the Commission's arbitrariness was highlighted by its dismissal of the unauthorized vehicle charge, based on the Commission's mistaken belief that Lim did not own his taxicab. Yet, Lim owned his vehicle, a fact within the record and unearthed by Hack Inspector Smith's records search. Lim argues that the Commission was trying "to split the difference" and that charging Lim with one violation and not the other was arbitrary, since both were based on the same set of underlying facts.
The only way this decision could be deemed arbitrary is if the status of being unlicensed affected or was related to the provision for authorized vehicles. Neither side asserts that these provisions are related. Thus, it is hard to see how Lim was prejudiced by the Commission's mistaken impression that he did not own his own vehicle. Further, Lim's inference that the Commission was out to illicitly "split the difference" is not supported by the record. We note merely that the Commission is under an obligation to support its findings of fact and conclusions of law based on facts presented in the record.
Finally, Lim argues that he was prejudiced when, despite the Commission's indications both before and after oral argument that he would be able to submit a post-hearing brief, the Commission issued an oral decision without the benefit of the brief. After rendering its decision, the Commission suggested to counsel that the brief could serve as a petition for reconsideration. Again, although the Commission's actions do not constitute reversible error, as there exists no due process right or right arising from the statutes or regulations of the District of Columbia to file a brief, the Commission's handling of the matter was inappropriate and should not be repeated. Where counsel has been told that he or she may file a post-hearing brief, we strongly urge the Commission to refrain from making a decision until it has the benefit of that brief. A petition for reconsideration cannot have the same practical effect on a final decision as a brief which normally is considered before a final decision is entered.
Nevertheless, Lim was not prejudiced by his counsel's inability to file a post-hearing brief. Indeed, in his brief, Lim argues merely that "because the Commission had previously led Lim's counsel to believe he would have the opportunity to submit a post-hearing brief, counsel waived the opportunity to present a closing argument. [Lim] was significantly prejudiced by the Commission's `about face' on this matter." Yet, counsel does not indicate the nature of the substantial prejudice, and, indeed, we can find none.
Affirmed.
NOTES
[1] Under the Reciprocity Agreement, this prearranged fare, whereby Lim, a licensed Virginia taxi driver, would enter the District of Columbia to pick up a fare and then return to Virginia, was permissible. See, infra, at 722-723.
[2] Regulation § 822.2 provides: "No person shall drive or be in physical control of a taxicab unless he or she has in his or her possession a valid license issued to him or her under § 31(e) of the License Act ... and a valid District of Columbia motor vehicle operator's permit."
[3] Regulation § 822.3 provides:

It shall be the duty of the owner of a taxicab and his or her agent or lessee to prevent any person from driving a taxicab unless a person has in his or her possession a valid license issued to him or her under § 31(e) of the License Act ... and a valid District of Columbia motor vehicle operator's permit.
[4] D.C.Code § 40-1704 (1986) provides: "There is established the District of Columbia Taxicab Commission as a subordinate agency within the executive branch of the District government with exclusive authority for intrastate regulation of the taxicab industry as provided herein."
[5] D.C.Code § 40-1719(a) (1986) provides: "No person ... shall operate a taxicab ... within the District without first procuring all applicable licenses required by the Commission ... or in the event of licensure by another jurisdiction pursuant to reciprocal agreement."
[6] As the District ably argues the point:

This is particularly true with respect to the reciprocal taxicab agreement, which is merely an adjunct to the District's (and Virginia's) own internal laws and regulations against unlicensed taxicab operation. The reciprocal agreement itself was never promulgated as a District statute or regulation and contains no provisions for penalties. Rather, it serves to define the circumstances when a Virginia taxi operating in the District is considered to be in compliance with the District's license laws. Thus, in any case involving the reciprocal agreement, the law that is being enforced is ultimately the District's (or Virginia's) internal licensing laws, which intrastate agencies clearly have authority to enforce.
[7] The Council of the District of Columbia expressed its concern with the fragmented approach to such matters in the codified form of the statute: "Governmental regulation of the taxi industry in the District has been and is presently marked by a fragmented, decentralized, and uncoordinated system of regulation involving no less than 7 different administrative offices ..." D.C.Code § 40-1701(3) (1986).
[8] The Committee Report continues:

The need for centralization of regulatory authority over taxicabs, results from the fragmented system currently employed in the District to regulate taxicabs. Presently, more than seven different offices of government are involved in taxi regulation not to mention the Mayor, City Council, and P.S.C.....
This fragmented regulatory scheme has been consistently criticized over the years. Characterized as confused and uncoordinated, a number of studies, hearings, and newspaper articles have called for a sweeping reform of the system for the last three decades....
The Committee is firmly convinced of the wisdom of centralization. The problems emerging from fragmentation have created numerous obstacles to efficient regulation and supervision of the industry....
Committee Report at 2.
[9] We note that Lim too sought to use hearsay testimony by testifying that he heard the passenger state that he wanted to go to his hotel in Virginia and then on to National Airport.
[10] In Jadallah, the court stated:

It is one thing to hold that hearsay evidence is admissible at agency hearings, but quite another thing to say that the direct sworn testimony of a witness on a crucial fact can be effectively refuted by hearsay, i.e., the statements of persons not produced as witnesses  and hence not subject to cross-examination  when the party relying on such statements is in a position to call the declarants to the stand.
Supra, 476 A.2d at 676.
The court in Jadallah addressed facts very different, however, from those in this case. In that case, an employee provided Hecht's garage attendants with prestamped parking tickets. Although a written admission had been prepared and signed by the employee, he also asserted that he thought the garage attendants were allowed to have the tickets. At the hearing, the only witness for Hecht's, who had no personal knowledge of the events and had merely read the written admission, testified that he thought that the charged employee provided the tickets knowing that the garage attendants were not allowed such tickets. His conclusion was evidently supported by statements made to him by Hecht's security department officials, who had relied on statements made to them by the garage attendants. Id. at 673-74. The court found that although hearsay is admissible in administrative proceedings, such "hearsay based on hearsay" was too attenuated to support the findings of the agency. Id. at 677.
[11] Although scenarios can be envisioned where a passenger might be unwilling to cooperate, in most cases it is likely that a hack inspector could request that the passenger sign a statement indicating the passenger's desired destination, in the presence of the hack inspector and the driver. This statement would take moments to fill out and would obviate the need to call the witness later. If a dispute still existed, the passenger could be subpoenaed or deposed, pursuant to the applicable regulations. See 18A DCMR §§ 337, 338 (1987).
[12] Technically, counsel in this case filed his appeal too early, allegedly because he never thought a written decision would issue. The District does not argue that this case is before this court prematurely, and we see no useful purpose in remanding simply so that counsel can refile the same papers.