**Jonathan P. ROBINSON, Petitioner,**

v.

**Franklin L. SMITH, et al., Respondents.**

**No. 95–AA–1163.**

District of Columbia Court of Appeals.

Argued June 11, 1996.

Decided Oct. 17, 1996.

---

Jeffrey S. Gutman, Washington, DC, for petitioner.

Phillip A. Lattimore, Assistant Corporation Counsel, for respondents. Charles F.C. Ruff, Corporation Counsel, Charles L. Reischel, Deputy Corporation Counsel, and Sonia Bacchus, Assistant Corporation Counsel, were on the brief for respondents.

Before WAGNER, Chief Judge, and TERRY and STEADMAN, Associate Judges.

STEADMAN, Associate Judge:

By statute, nonresident tuition must be paid for each child who attends a public school in the District of Columbia and does not have a parent or guardian who resides in the District, unless the child is an orphan or obtains an exemption from the Board of Education. D.C.Code § 31–602 (1993 Repl.); *see also* 5 DCMR 2000.2 (1995). Petitioner seeks review of a decision by the Superintendent of the District of Columbia Public Schools (DCPS) affirming a hearing examiner's determination that petitioner was a resident of Maryland, rather than the District, and accordingly that nonresident tuition must be paid for petitioner's two children who attended public schools in the District.

Petitioner makes three principal arguments. First, he contends that we should reverse the DCPS decision as unsupported by reliable, probative and substantial evidence in the record. Second, petitioner contends that we should vacate the decision and remand for a new hearing because of DCPS's alleged failure to follow certain procedures. Finally, petitioner contends that the DCPS proceedings against him should have been dismissed due to administrative delay. We affirm.

## I.

On May 12, 1992, the DCPS Inspector General's office alerted DCPS's Nonresident Tuition Enforcement Branch (the Branch) that a car bearing Maryland registration tags and registered to petitioner and his wife at a Maryland address had been observed delivering children to a public school in the District of Columbia. DCPS determined that petitioner and his wife were the parents of

two children enrolled in DCPS, and that petitioner and his wife had executed DCPS forms certifying that they both resided at an Illinois Avenue address in the District of Columbia. However, in February 1992, postal authorities had verified that petitioner and his wife received mail at the Maryland address.

On May 19, 1992, the Branch director wrote to petitioner and his wife, noting that a preliminary investigation revealed that they were residing at the Maryland address, and that they therefore owed $3,458 in nonresident tuition for their children's attendance at DCPS during the second semester of the 1991–92 school year. The letter instructed petitioner and his wife to contact the Branch by telephone if they wished to discuss the matter. On June 8, 1992, petitioner's mother sent a notarized letter to the Branch director, stating that petitioner and his two children resided with her at her Illinois Avenue home.[1]

The case was assigned to a DCPS investigator in August 1993. During that month, DCPS obtained verification from postal authorities that petitioner was receiving mail at the Maryland address, but not at Illinois Avenue. Further investigation in April 1994 and January 1995 revealed that the personnel records of petitioner's employer, Howard University Hospital's patient accounting office, listed the Maryland address for petitioner, while the hospital's payroll office records showed that petitioner had changed his address from Maryland to Illinois Avenue on October 1, 1993. Maryland state records listed petitioner and his wife as owners of the property at the Maryland address since 1986, and the 1994 Haines Directory listed the Maryland address for petitioner.

Based on this information, DCPS wrote to petitioner on April 12, 1995, stating that further investigation revealed that petitioner resided at the Maryland address, and that he therefore owed $33,785 in nonresident tuition for his children's attendance at DCPS beginning in the spring semester of the 1991–92 school year. The letter advised petitioner to telephone DCPS if he wished to discuss the matter. On April 25, 1995, petitioner telephoned DCPS and maintained that he was a resident of the District. The following day, petitioner submitted a written request for a hearing.

A hearing was scheduled for May 5, 1995. In the meantime, DCPS investigators observed petitioner picking up his son after school in a car with Maryland tags, obtained verification from postal authorities that petitioner was continuing to receive mail at the Maryland address and from Maryland state records that petitioner and his wife were the record owners of the Maryland property, and interviewed neighbors of the two addresses on May 4, 1995, the day before the hearing. Maryland neighbors stated that the children lived at the Maryland address, and that the family had lived in the house for eight years. One Maryland neighbor stated that she knew petitioner and his children and saw them on a daily basis. By contrast, neighbors of petitioner's mother on Illinois Avenue were unable to verify that petitioner lived at his mother's house. Indeed, one Illinois Avenue neighbor stated that petitioner lived in Maryland, that he dropped his children off in the District on his way to work, and that the children were picked up at his mother's house in the evenings.

At the May 5, 1995 hearing, two DCPS investigators and another representative of DCPS testified to the above information. Petitioner testified that his wife still lived at the Maryland address, but that he and his wife were "basically" separated, and that he and his children had resided with his mother at the Illinois Avenue address since about 1990. In addition, petitioner testified that he had paid D.C. taxes since 1991, 1992, or 1993. Petitioner also submitted copies of documents listing his address on Illinois Avenue in the District, including a form W–2 wage and tax statement indicating that D.C. income taxes were withheld from his wages during 1994, a credit card bill, a D.C. driver's license, a D.C. voter registration card, a Social Security card, a check and a February 1995 bank statement from his joint account with his mother and brother at a D.C. bank,

1. It also appears that, in September 1993, petitioner provided DCPS with evidence that he resided at the Illinois Avenue address, including a copy of his D.C. driver's license.

notifications of deposit from his employer dated May 1994 and April 1995, and a notarized statement from his mother that petitioner had lived permanently at the Illinois Avenue address since 1990.

At the close of the hearing, the hearing examiner stated that she would leave the record open until May 9, 1995 for the purpose of receiving evidence of whether petitioner's third child was also attending DCPS.[2] On May 15, petitioner wrote to the hearing examiner. Among other things, petitioner's letter clarified that he had begun paying D.C. taxes in 1993, disputed the neighbors' statements to the investigators, explained that he had not yet registered his car in the District because his wife would not release the title to him, stated that he received credit card bills and bank statements addressed to the Illinois Avenue address in the mail, explained that he received mail at the Maryland address because he was still a co-owner of that property, and stated that he had never voted or registered to vote in Maryland. In addition, petitioner noted that, after first receiving correspondence from the Nonresident Tuition Enforcement Branch, he submitted proof of District residency, and had not heard anything further until 1995.[3]

On June 29, 1995, the hearing examiner, expressly refusing to consider the information submitted by respondent after the record closed, issued a determination that petitioner owed $33,785 in nonresident tuition. After summarizing the evidence, the hearing examiner found that (1) petitioner and his wife were the parents of the two students at issue; (2) petitioner, his wife, and their three children resided at the Maryland address, and had done so since 1986; (3) petitioner also received mail at the Illinois Avenue address; (4) the two children at issue had been enrolled in DCPS since the 1991–92 school year; (5) one child attended Jefferson Junior

High School and the other attended Stevens Elementary School; and (6) "[t]hroughout their attendance in the DCPS since September 1991, [petitioner's] children have had neither a court appointed guardian or custodian residing in the District of Columbia nor an exemption from the payment of nonresident tuition."

To explain her findings, the hearing examiner highlighted four aspects of the evidence. First, while petitioner asserted that he and his wife had lived apart since 1990, she in Maryland and he in the District, and never claimed that his wife had lived at the Illinois Avenue address, the children's school enrollment forms for three different years listed the Illinois Avenue address for both petitioner and his wife. Second, the hearing examiner cited the testimony of the investigators that neighbors at both addresses indicated that petitioner lived in Maryland. Third, the hearing examiner noted that, while petitioner submitted some evidence of D.C. residency, he produced few pieces of mail received at the Illinois Avenue address to document his claimed five-year residency there; in addition, petitioner's submission was notarized by a Maryland notary public. Fourth and finally, the hearing examiner pointed to inconsistencies in petitioner's testimony regarding whether his paychecks were deposited into his D.C. savings bank account. It is readily apparent from the hearing examiner's statements that inconsistencies in petitioner's story led her to credit DCPS's evidence that petitioner resided at the Maryland address over petitioner's evidence that he resided on Illinois Avenue.[4] Accordingly, the hearing examiner concluded that DCPS had proved its case by a preponderance of the evidence.

Petitioner appealed the hearing examiner's determination to the Superintendent, resubmitting the supplemental information that

---

**2.** No issue with regard to this third child is before us on appeal.

**3.** Petitioner also submitted additional documents indicating the Illinois Avenue address: another credit card bill, a summons for jury service at the Superior Court of the District of Columbia, a loan voucher, and a U.S. savings bond statement.

**4.** Petitioner argues that the statements made by the hearing examiner to support her findings

were the result of her misunderstanding of certain details of the evidence. Even assuming *arguendo* that the hearing examiner did make the mistakes that petitioner alleges as to these details, the essence of the hearing examiner's statements is that there were inconsistencies in petitioner's story. With or without the alleged mistakes, these inconsistencies remain.

the hearing examiner had refused to consider. The Superintendent considered petitioner's supplemental information along with the rest of the record, and affirmed the hearing examiner's decision on August 14, 1995. Petitioner filed a timely petition for review in this court, *see* D.C.App.R. 15, and a division of this court granted petitioner's motion for a stay of the Superintendent's decision pending consideration of the petition for review. *See* D.C.App.R. 18.

## II.

▉▉▉ In considering petitioner's argument that the DCPS decision is not supported by reliable, probative, and substantial evidence in the record, *see* D.C.Code §§ 1–1509(e)–1510(a)(3)(E) (1992 Repl.), we begin with the premise that the agency's decision "is presumed to be correct, so that the burden of demonstrating error is on the appellant or petitioner who challenges the decision." *Cohen v. Rental Housing Comm'n,* 496 A.2d 603, 605 (D.C.1985) (citation omitted). We then apply these familiar principles:

The agency must make findings on each material issue of fact; the factual findings must be supported by substantial evidence on the record as a whole; and the agency's conclusions must flow rationally from those findings and comport with the applicable law. Our function is to ascertain whether the inferences drawn by the administrative agency are within the reasonable boundaries prescribed by the facts. Substantial evidence is more than a mere scintilla of evidence and includes such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Factual findings supported by substantial evidence on the record as a whole are binding on the reviewing court, although this court may have reached a different result based on an independent review of the record.

*Williamson v. District of Columbia Bd. of Dentistry,* 647 A.2d 389, 394 (D.C.1994) (internal quotations and citations omitted).

## A.

Although the hearing examiner made six separate findings of fact, the only one over which petitioner has raised any question is the critical finding that he, his wife, and their children resided at the Maryland address during the period in question. The relevant statute, D.C.Code § 31–602 *et seq.* (1993 Repl.), does not define "reside" or "residency."[5] However, a Board of Education regulation explains that

Evidence of District residency may include, but is not necessarily limited to, the following:

(a) Proof of payment of D.C. personal income tax;

(b) Title to residential property in the District of Columbia, or valid, unexpired lease agreement or receipts for payment of rent on a D.C. residence in which the applicant actually resides;

(c) A valid, unexpired D.C. Motor Vehicle Operators Permit, or a D.C. Motor Vehicle Registration;

(d) Maintenance of D.C. voter registration;

(e) Maintenance of bank account(s) or local credit account(s) in the District of Columbia; and

(f) Membership in a church or other local organization operating in the District of Columbia.

5 DCMR § 2002.11 (1995). Petitioner contends that the DCPS determination that he was not a District resident should be reversed as unsupported by substantial evidence because his submission of a W–2 form,[6] a D.C. driver's license, a D.C. voter registration card, and evidence that he maintained a bank account in the District constituted uncontroverted evidence of four of the six indicia of District residency enumerated in § 2002.11.

---

5. We have noted that " '[r]esidence' is not a term of fixed legal definition but takes on shades of meaning according to the context in which it is found." *District of Columbia v. H.J.B.,* 359 A.2d 285, 290 (D.C.1976) (citation omitted).

6. We note that the 1994 W–2 form submitted by petitioner indicates only that D.C. personal income tax was withheld from his wages for that year; unlike a tax return (which petitioner did not submit), a W–2 form is not necessarily proof of payment of D.C. income tax.

When an agency's decision "is based on an interpretation of the statute and regulations it administers, that interpretation will be sustained unless shown to be unreasonable or in contravention of the language or legislative history of the statute." *Kalorama Heights Ltd. Partnership v. District of Columbia Dep't of Consumer and Regulatory Affairs,* 655 A.2d 865, 868 (D.C. 1995) (internal quotation and citation omitted). Section 2002.11 is an administrative guide directed to persons responsible for admission and registration procedures. Clearly it does not set forth the universe of evidence relevant to a determination of District residency *vel non* or suggest that the specific forms of evidence set forth must be deemed determinative. Thus, we do not think that DCPS's consideration of other evidence of petitioner's residency—including his Maryland car registration tags, his ownership of the Maryland home, his receipt of mail at the Maryland address, his employer's personnel files, and the neighbors' belief that he lived at the Maryland address—reflects an unreasonable interpretation of the statutory or regulatory meaning of residency, or contravenes the statute in any way.

Particularly in light of the hearing examiner's unique position to assess the credibility of petitioner and the other witnesses, *see Allen v. District of Columbia Bd. of Elections and Ethics,* 663 A.2d 489, 495 & n. 11 (D.C.1995), we cannot say that the evidence submitted by petitioner renders the hearing examiner's finding to be unsupported by substantial evidence in the record as a whole. *See Baumgartner v. Police and Firemen's Retirement and Relief Bd.,* 527 A.2d 313, 316 (D.C.1987) ("If this court, upon examining the record as a whole, concludes that the [agency's] findings are supported by substantial evidence, it must accept those findings, even though there may also be substantial evidence in the record to support a contrary finding.") (citations and footnote omitted); *United Unions, Inc. v. District of Columbia Bd. of Zoning Adjustment,* 554 A.2d 313, 315–16 (D.C.1989) ("[A]n agency, as a finder of fact, may credit the evidence upon which it relies to the detriment of conflicting evidence, and [generally] need not explain why it favored the evidence on one side over that on the other.") (citations and footnote omitted).[7]

**B.**

Petitioner also argues that the DCPS decision was improperly based in part on the investigators' testimony about the neighbors' statements.[8] However, " '[h]earsay evidence is admissible in administrative proceedings unless it is irrelevant, immaterial, or unduly repetitious.' " *James v. District of Columbia Dep't of Employment Servs.,* 632 A.2d 395, 398 (D.C.1993) (quoting *Lim v. District of Columbia Taxicab Comm'n,* 564 A.2d 720, 724 (D.C.1989)); *see also* 5 DCMR § 2009.12(b) (1995) ("The rules of evidence shall not strictly apply" in DCPS residency hearings).[9] Even hearsay evidence that lacks indicia of reliability may be entitled to some weight, *see Washington*

7. For the same reasons, we also reject petitioner's contention that, in light of the evidence he submitted, the agency's decision is arbitrary and capricious.

8. In a related argument, petitioner contends that the hearsay nature of the neighbors' statements deprived him of any meaningful opportunity to respond to the evidence against him, a right conferred by statute, *see* D.C.Code § 1–1509(b) (1992 Repl.), regulation, *see* 5 DCMR § 2009.11(c) (1995), and notions of due process. However, although the hearing examiner advised petitioner of his right to cross-examination and specifically alerted petitioner to his right to "take[ ] issue" with the investigators' testimony about the neighbors' statements, petitioner failed to cross-examine the investigators, and during the hearing, the only challenge petitioner made to the neighbors' statements was that it was impossible for the Maryland neighbors to see him every day. After the hearing, petitioner submitted, and the Superintendent explicitly stated that he had considered, a detailed written response to all of the evidence that had been presented against petitioner, including the neighbors' hearsay statements. Accordingly, petitioner was afforded ample opportunity to make a meaningful response to the evidence against him.

9. This is because, "unlike juries, agency members are ... capable of properly assessing the reliability and weight of evidence that is hearsay in nature." *Jadallah v. District of Columbia Dep't of Employment Servs.,* 476 A.2d 671, 676 (D.C.1984) (internal quotation and citations omitted).

*Times v. District of Columbia Dep't of Employment Servs.*, 530 A.2d 1186, 1190 (D.C. 1987), and reliable hearsay evidence may constitute substantial evidence standing alone. *Wisconsin Avenue Nursing Home v. District of Columbia Comm'n on Human Rights*, 527 A.2d 282, 288 (D.C.1987); *see also Coalition for the Homeless v. District of Columbia Dep't of Employment Servs.*, 653 A.2d 374, 377–78 (D.C.1995) ("[H]earsay found to be reliable and credible may constitute substantial evidence especially where the evidence is uncontradicted, but without extrinsic corroboration ... such evidence will be scrutinized carefully.") (internal quotations, alterations, and citations omitted). We have said that

> [a]mong the factors to consider in evaluating the reliability of hearsay evidence are whether the declarant is biased, whether the testimony is corroborated, whether the hearsay statement is contradicted by direct testimony, whether the declarant is available to testify and be cross-examined, and whether the hearsay statements were signed or sworn.

*Wisconsin Avenue Nursing Home, supra,* 527 A.2d at 288 (citation omitted).

Applying these factors to the neighbors' hearsay statements in this case, we cannot say that they weigh decisively against use of that evidence. Petitioner makes no claim that the neighbors were biased against him, and the neighbors' statements were corrobo-rated by ample non-hearsay evidence that petitioner lived at the Maryland address,[10] although the neighbors' statements were neither signed nor sworn, and were contradicted by petitioner's sworn testimony that he lived at the Illinois avenue address.[11] With regard to whether the neighbors were available to testify and be cross-examined, DCPS failed to call the neighbors as witnesses, and the investigators' oral testimony did not identify the neighbors by name.[12] On the other hand, petitioner never asked about the names of the neighbors, at least some of which were available in the investigator's written report itself. Nor did petitioner make any attempt to request a continuance so that he could investigate further and perhaps call the neighbors as witnesses himself.[13]

Reversal of an agency decision "may be warranted if [the] agency places undue confidence in hearsay evidence that is too unreliable to justify the weight given to it." *Lim, supra,* 564 A.2d at 724 (internal quotation and citations omitted). Here, the neighbors' hearsay statements constituted only one of the four aspects of the evidence that the hearing examiner highlighted to explain her findings. Given the ample non-hearsay evidence that petitioner resided at the Maryland address,[14] and the skepticism with which the hearing examiner viewed petitioner's evidence to the contrary,[15] we conclude that the hearing examiner's finding as to petitioner's Maryland residency is supported by reliable, probative and substantial evi-

---

10. This corroborating evidence, discussed more fully above, included, *inter alia,* petitioner's Maryland car registration tags, his ownership of the Maryland home, his receipt of mail at the Maryland address, and his employer's personnel files.

11. As already noted, petitioner's testimony itself was brought into question by its inconsistencies. We stated in *Wisconsin Avenue Nursing Home, supra,* that "whether the hearsay statement is contradicted by direct testimony" is just one factor in evaluating the reliability of the hearsay evidence. 527 A.2d at 288. Although we have expressed our concern about agencies' reliance on hearsay to contradict sworn testimony, *see, e.g., Lim, supra,* 564 A.2d at 725, such reliance does not necessarily constitute error, particularly where the hearsay is corroborated by other evidence. *See id.* at 724–25; *James v. District of Columbia Dep't of Employment Servs.*, 632 A.2d 395, 398 (D.C.1993).

12. *Cf. Jadallah, supra* note 10, 476 A.2d at 677 (hearsay statements unreliable where, *inter alia,* party offering the statements failed to explain why declarants were not called as witnesses).

13. *Cf. Wallace v. District Unemployment Compensation Bd.,* 294 A.2d 177, 180 (D.C.1972) (rejecting petitioner's challenge to agency decision based in part on hearsay evidence, and noting that "petitioner could have exercised his right" to call the declarant as a witness).

14. *See supra* note 10.

15. *Cf. Williams v. District Unemployment Compensation Bd.,* 383 A.2d 345, 349 (D.C.1978) (accepting Board's finding which credited hearsay evidence over petitioner's contrary testimony, where hearsay was corroborated and petitioner's testimony was inconsistent with petitioner's written report of the events in question).

dence in the record as a whole. Based on the hearing examiner's findings, the statute requires that nonresident tuition be paid for petitioner's children. *See* D.C.Code § 31–602 (1993 Repl.).

## III.

■ Petitioner contends that DCPS committed several procedural violations; consequently, he argues that we should remand this case to the agency for a new hearing. Administrative agencies are bound to follow their own rules and regulations, *see, e.g., Macauley v. District of Columbia Taxicab Comm'n,* 623 A.2d 1207, 1209 (D.C.1993). However, failure to do so will not lead to reversal where the petitioner has not been prejudiced by the deviation from required procedures. D.C.Code § 1510(b) (1992 Repl.) (rule of prejudicial error applicable to administrative review); *Regional Constr. Co. v. District of Columbia Dep't of Employment Servs.,* 600 A.2d 1077, 1078–79 (D.C.1991), *cert. denied,* 505 U.S. 1206, 112 S.Ct. 2997, 120 L.Ed.2d 873 (1992). The agency here did indeed appear to take a fairly cavalier and hardly commendable attitude towards its obligations to comply with its own explicit procedural regulations relating to residency

dispute determinations. Nevertheless, we can perceive no prejudice to petitioner to bring into question the fairness of the proceedings so as to warrant a new hearing.

■ Petitioner asserts, and DCPS does not contest, that DCPS failed to provide him with the written notice required by 5 DCMR § 2009 (1995), informing him of the procedures for review, his right to a hearing, and the rights and procedures applicable to the hearing process.[16] However, the record reflects that petitioner had actual notice of his right to the various levels of agency review. He availed himself of all levels of review, and he was present at and participated in the formal hearing that was held in his case.

■ Of potentially more serious concern is DCPS's apparent failure to provide petitioner with written notice of his hearing rights under 5 DCMR § 2009.11 (1995).[17] For example, the record does not reflect that petitioner was ever notified of his right to be represented by counsel under § 2009.11(a). However, petitioner does not contend that he would have hired counsel to represent him in the hearing process if he had been notified of this right; nor does he argue that representation by counsel would have changed the

---

**16.** Under 5 DCMR § 2009.2 (1995), when DCPS determines that a student is not a resident of the District of Columbia, the parent "shall be given written notice ... of the procedures for review and adjudication of the claim of residency, as provided in this section." "Upon receipt of a request for review of a contested residency case, the Tuition Enforcement Office shall notify the claimant of all rights and procedures applicable to the conduct of the review and adjudication." 5 DCMR § 2009.4 (1995). "If the claim is not settled [informally] in favor of the claimant, the Tuition Enforcement Office shall give the claimant the decision in writing, along with notice of the right to a formal hearing." 5 DCMR § 2009.7 (1995). Such written notice "shall contain notice of all of the rights set forth in § 2009.11 and the procedures to be followed during the hearing process, as set forth in § 2009.12." 5 DCMR § 2009.10 (1995).
 The following rights are set forth in § 2009.11:
 (a) The right to be represented by counsel;
 (b) The right of the claimant or counsel to present oral testimony and documentary evidence in support of the claim at the hearing;
 (c) The right of the claimant or counsel to cross-examine any witness or evidence presented by the D.C. Public Schools and to present rebuttal testimony and evidence;

(d) The right to a copy of the hearing record, which shall include all documentary evidence;
 (e) The right to a copy of the electronic recording of the hearing; [and]
 (f) The right to appeal an adverse decision [to the Superintendent of Schools] under § 2009.14.
5 DCMR § 2009.11 (1995).
 The hearing procedures set forth in § 2009.12 are as follows:
 (a) The hearing shall be closed unless the claimant requests in writing or on the record to open the hearing. An open hearing may be closed at any time by the claimant;
 (b) The rules of evidence shall not strictly apply; however, they shall be used as guidelines for an orderly hearing. The person or persons conducting the hearing may exclude irrelevant or repetitive testimony or evidence;
 (c) The testimony given at the hearing shall be under oath or affirmation; and
 (d) Any person may be excluded from the hearing for conduct that interferes with the conduct of the hearing.
5 DCMR § 2009.12 (1995).

**17.** *See supra* note 16.

outcome of the hearing. He contends only that he was prejudiced in mounting a meaningful defense by DCPS's failure to notify him that he had the right to examine the hearing record prior to the hearing.

 To support this argument, petitioner cites to 5 DCMR § 2009.11(d) (1995), which states that "[t]he claimant shall have ... [t]he right to a copy of the hearing record, which shall include all documentary evidence." Because petitioner did not make this argument at the agency level, we do not have the benefit of the agency's "[f]ull consideration and reasoned exposition"[18] of the meaning of § 2009.11(d). Nevertheless, before this court, DCPS (through Corporation Counsel) argues that § 2009.11(d) refers to the claimant's right to obtain a copy of the hearing record *after* the hearing is completed. This interpretation is entirely plausible. Particularly when read in conjunction with the two subsections that follow it[19]—

18. *Gay v. Dep't of Employment Servs.*, 644 A.2d 1326, 1328 (D.C.1994).

19. A regulation, like a statute, is to be interpreted as a whole. *See Citizens Ass'n of Georgetown v. District of Columbia Bd. of Zoning Adjustment,* 642 A.2d 125, 128–29 (D.C.1994).

20. Petitioner cites us to *Babazadeh v. District of Columbia Hackers' License Appeal Bd.*, 390 A.2d 1004 (D.C.1978), for the proposition that, even apart from the DCPS regulations, notions of due process required DCPS to provide him both with access to the record prior to the hearing, and with notice of his right to such access. In *Babazadeh*, a complaint filed against the petitioner, a taxi driver, led to his suspension. Prior to the hearing held on the complaint, the petitioner requested the name of the complainant in order to investigate the charge, but his request was denied. The administrative agency had a specific regulation giving a pre-hearing right of access to the file, and we accordingly vacated the order of suspension. *Id.* at 1007–09. In this case, unlike in *Babazadeh*, petitioner never requested pre-hearing access to his file; therefore, we simply do not know whether DCPS would have granted or denied such a request. Moreover, unlike in *Babazadeh*, here no regulation required that petitioner be given pre-hearing access to his file. We do not read that case as establishing any due process right to pre-hearing access absent an agency regulation or any right to notice absent such a regulation.

21. Petitioner also argues that DCPS violated his right to due process by compiling hearsay evidence against him on the day before the hearing

§ 2009.11(e), which gives the claimant "[t]he right to a copy of the electronic recording of the hearing," and § 2009.11(f), which gives the claimant "[t]he right to appeal an adverse decision"—§ 2009.11(d) is most naturally read to give the claimant the right to a copy of the entire record after the hearing is completed in order to pursue further review. Consequently, we conclude that DCPS had no obligation to notify petitioner that he could examine the hearing record prior to the hearing.[20]

 Thus, the only prejudice asserted by petitioner with regard to his claim of procedural deficiencies is contingent upon a right that does not exist.[21] Accordingly, to the extent that DCPS failed to follow its regulations in providing required notices, that failure was harmless and cannot form the basis for reversal. *See* D.C.Code § 1–1510(b) (1992 Repl.); *Regional Constr. Co., supra,* 600 A.2d at 1079.[22]

(in the form of the investigators' interviews with the neighbors, discussed above). Since petitioner never attempted to view his file at any time prior to the hearing, we perceive no significance in the timing of the investigators' interviews. See note 20, *supra*. In any event, since the Superintendent considered petitioner's post-hearing submission responding to all of the evidence against him, we are unable to discern any concrete prejudice resulting from petitioner's pre-hearing unfamiliarity with the evidence that DCPS had compiled.

22. Petitioner's remaining procedural arguments require little discussion. Petitioner contends that the hearing examiner erred in refusing to consider his post-hearing submission of evidence. It is not apparent that the hearing examiner committed any error in this regard. *See Harris v. District of Columbia Rental Housing Comm'n,* 505 A.2d 66, 69 (D.C.1986). However, assuming *arguendo* that error was committed, such error was harmless due to the Superintendent's subsequent consideration of petitioner's post-hearing submission.

Petitioner also contends that DCPS failed to attempt to settle the case informally. *See* 5 DCMR § 2009.5 (1995) (DCPS "shall first attempt to settle claims through informal fact-finding, interviews, and discussion with the parties."). This contention is clearly without merit, as the record reflects that, prior to petitioner's request for a formal hearing, DCPS twice advised petitioner to call if he wished to discuss the matter or arrange a personal conference, and DCPS personnel engaged in at least one tele-

## IV.

█ Petitioner's final argument is that the DCPS proceedings against him should have been dismissed due to unreasonable delay. *See Wisconsin Avenue Nursing Home, supra,* 527 A.2d at 286–87 & n. 4.[23] As noted above, DCPS first advised petitioner on May 19, 1992, that a preliminary investigation had revealed that petitioner and his wife resided at the Maryland address, and that they therefore owed nonresident tuition for their children. On June 8, 1992, petitioner's mother sent a notarized letter to the Branch director, stating that petitioner and his two children resided with her at her Illinois Avenue home. In September 1993, petitioner apparently provided DCPS with further evidence that he resided at the Illinois Avenue address. The record reflects no further communication between DCPS and petitioner on this issue until April 12, 1995, when DCPS advised that further investigation had confirmed that petitioner resided at the Maryland address. Petitioner contends that, since he did not hear further from DCPS after submitting evidence of his District residency in 1992 and 1993, he reasonably assumed that the residency issue had been resolved in his favor. Petitioner argues that he was prejudiced by DCPS's delay in completing its investigation and making a final determination because the nonresident tuition bill mounted as petitioner's children continued to attend DCPS in the interim.

█ Unreasonable delay by an administrative agency may justify dismissal of a proceeding if the prejudice caused by the delay "is grave and could not have been avoided by reasonable efforts on [the private party's] part to preserve and present [his] case despite the agency delay...." *Wisconsin Avenue Nursing Home, supra,* 527 A.2d at 286. In this case, the increase in the nonresident tuition bill is undoubtedly prejudicial to petitioner; however, that increase was caused not by any delay attributable to DCPS, but by petitioner's voluntary actions in continuing to enroll his children in DCPS. There is no indication whatever in the record that any agency delay gravely prejudiced petitioner's ability to present evidence that he was a District resident.[24] Instead, petitioner's argument amounts to a claim that DCPS should be estopped from proceeding against him because he reasonably relied on DCPS's silence between 1992 and 1995. This argument must be rejected.

█ The doctrine of equitable estoppel, if applicable against the government at all, *see Gropp, supra* note 24, 606 A.2d at 1016, may be invoked only "where there is a showing of some type of 'affirmative misconduct' by a government agent." *Id.* (quoting *Schweiker v. Hansen,* 450 U.S. 785, 788–90, 101 S.Ct. 1468, 1470–72, 67 L.Ed.2d 685 (1981); other citations omitted). "[M]ere delay does not constitute 'affirmative misconduct.'" *Id.* (citations omitted). DCPS never made an affirmative representation to petitioner that the residency matter had been resolved in his favor. In the absence of any such assurance, petitioner chose to continue sending his children to DCPS. Such circumstances cannot justify estopping a government agency from enforcing a statute within any applicable

phone discussion with petitioner about his residence. We agree with DCPS that this discharged any obligation imposed by § 2009.5.

23. DCPS claims that petitioner failed to raise this issue at the agency level. However, the hearing examiner *sua sponte* addressed the issue of delay with regard to tuition for the 1991–92 school year, finding that there was a delay but that petitioner was not prejudiced by it. In addition, in petitioner's post-hearing letter to the hearing examiner, which was considered by the Superintendent, petitioner referred to the delay issue, making what might be construed as an estoppel argument. Therefore, it appears that this issue has been adequately preserved for our review. In any event, given our conclusion on

the substantive issue, we may assume without deciding that this is so.

24. Despite petitioner's assertion that "delay until 1995 made it more difficult to show residency in 1992 due to loss of evidence or possible witnesses," petitioner makes no concrete reference to any evidence or testimony that might have been available to him earlier, but became unavailable due to the delay. *See Gropp v. District of Columbia Bd. of Dentistry,* 606 A.2d 1010, 1016 (D.C.1992) (no prejudice found, even though petitioner testified that relevant records were destroyed by flooding during period of agency investigation, where "it [was] not clear that the records would have been available" in the absence of the complained-of delay).

statute of limitations. *See id; National Hosp. Serv. Soc'y v. Jordan,* 76 U.S.App. D.C. 26, 128 F.2d 460, *cert. denied,* 317 U.S. 664, 63 S.Ct. 65, 87 L.Ed. 534 (1942). Accordingly, the decision of the DCPS is

*Affirmed.*